ANNA E. WEYRICH

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. CHANGE OF VENUE—*out of circuit in criminal case.* The sending of a criminal case to an adjoining county, but out of the judicial circuit, upon an application by the defendant for a change of venue on the ground of prejudice of the inhabitants of the county in which the indictment is found, is not in violation of the constitutional provision which secures to the accused a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed.

2. SAME—*right to trial in district waived.* The constitutional right to a trial in the county or district in which an offense is alleged to have been committed, is one that a defendant may waive, and which is waived by a petition for a change of venue.

3. CONSTITUTION—*right to trial in county or district.* The plain object of the clause of the constitution giving the accused the right to a speedy public trial by an impartial jury of the county or district, etc., is to secure the common law right of trial by a jury of the *visne* or neighborhood where the offense is alleged to have been committed, and to protect him against a prosecution elsewhere. The grand jury indicting, and the traverse jury trying, must be of the *visne*. The creation of judicial circuits has no reference to the enforcement of this clause of the constitution, but the word "district," is convertible with that of "county," and is descriptive of the territory which in legal contemplation comprises the *visne*.

4.  Although there may be many counties or districts in the same circuit, the court in each is entirely separate and disconnected from that in all the others, and its jurisdiction, within the meaning of the constitutional clause, is limited by its territorial boundaries.

5.  CRIMINAL LAW—*right to a speedy trial.* The right to a speedy trial guaranteed by the constitution to one accused of crime, is only against arbitrary and oppressive delays, and is in nowise violated by such delays as are induced by the lapse of time intervening regular terms of court, or such as are inevitable in consequence of the amount of other criminal business having priority on the docket, or such as shall be necessary with proper efforts to procure an impartial jury and the attendance of witnesses.

6.  SAME—*declarations of deceased on charge of poisoning.* On the trial of a wife on the charge of murdering her husband by poison, the declarations of the deceased, made at different times through a period of several years before his death, out of the hearing of the accused, and in nowise assented to by her or communicated to her, which are not dying declarations, nor a part of the *res gestæ,* but expressive simply of his own state of feeling toward the accused at the time, or narratives of past events, are not admissible in evidence.

7.  SAME—*evidence showing motives, etc.* In prosecutions for murder, as of a husband by his wife, a wide degree of latitude is allowable to the prosecution to possess the jury with all the circumstances which may reasonably throw light upon the transaction. It is hence allowable to prove the existence of facts which experience shows may operate as motives to the commission of crime, such as the expectation of pecuniary gain, express malice, the gratification of lust, etc.

8.  And it has accordingly been held competent, where the husband or wife is charged with the murder of the other, to show their mutual conduct towards and treatment of each other, as manifested by acts and words—the fact that one is engaged in an illicit sexual commerce with, or has contracted a sexual passion for, another person, etc.—but, in general, proof in these respects must not be confined to mere hearsay.

9.  EVIDENCE—*declarations out of presence of party to be affected.* The exceptions to the rule, wherein the declarations of one party, not made in the presence, or with the express or implied concurrence of another party, whom they affect, are admissible in evidence, are limited by the books to dying declarations, declarations accompanied by and explanatory of facts, so as to form a part of the *res gestæ,* evidence of general character, declarations as to present state of health, or expressive of condition of mind, etc., family pedigree and ancient boundaries, monuments and other public matters falling under the same principle.

10.  On the trial of one for the murder of her husband by poisoning, the declarations of the deceased in regard to a prior attack of some disease of a character or nature he did not entirely comprehend, and not made in explana-

tion of his present state of health, but merely as a narrative of a past occurrence, are clearly inadmissible in evidence.

11. SAME—*of motive for commission of crime.* On a charge against a wife for the murder of her husband, it is competent for the prosecution to prove her unchastity in order ·to establish a motive for taking the life of the deceased, but she is entitled to face and cross-examine the witnesses as to every circumstance tending to show such fact; and no fact or circumstance claimed to have such tendency, can be proved by hearsay.

12. SAME—*declarations of suspicion by murdered husband.* So, on the trial of such a charge, proof of the declarations of the deceased husband of his suspicion of his wife's chastity, and his statements, made at different times, of her conduct he had witnessed with other men, tending to show her want of chastity, not communicated to the accused, and not explanatory of any present act or declaration of hers, but mere narratives of past acts, made in her absence and without her knowledge, and followed by no act of his of which they are explanatory, is clearly inadmissible. Without knowledge on her part of such statements, they could not affect her conduct, and as proof of ,her unchastity they are incompetent, as being hearsay.

13. INSTRUCTION—*expression of opinion on facts.* It is not the province of the court, in a criminal case, to express any opinion upon the facts, and this whether orally during the trial, or in the form of instructions when the evidence has all been heard. The court should state the law only, and leave the jury to judge of the facts; and especially is it objectionable for the court to express any opinion upon any combination of facts assumed or proved, which does not embrace every contrary hypothesis which the evidence tends to establish. An instruction is erroneous which is but an argument on the facts, and that in a partial view.

WRIT OF ERROR to the Circuit Court of Logan county; the Hon. LYMAN LACEY, Judge, presiding.

Messrs. ROBERTS & GREEN, for the plaintiff in error.

Mr. JAMES K. EDSALL, Attorney General, Mr. W. L. PRETTYMAN, State's Attorney, and Mr. JNO. B. COHRS, for the People.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

At the September term, 1877, of the Tazewell circuit court, the plaintiff in error was indicted for the murder of her husband, Peter Weyrich, by poisoning, and on the 19th of October,

being one of the days of the same term of court, she presented to the court her petition, verified by her own affidavit and those of two other citizens of Tazewell county, praying for a change of venue in the cause, on account of the prejudice of the inhabitants of Tazewell county against her. It was also alleged in the petition, that the same prejudice was entertained against her by the inhabitants of Woodford county, and it was, therefore, also prayed that the cause be sent to some other than that county for trial. The court ordered that the venue in the cause be changed to Logan county. At the January term, 1878, of the Logan circuit court, the plaintiff in error filed her plea denying the jurisdiction of that court to try the cause, to which the court sustained a demurrer. She then moved the court, supported by affidavit, that she be discharged, for want of jurisdiction in that court to proceed with the trial of the cause—but this motion was overruled. The court thereupon proceeded with the trial of the cause, and the jury, by their verdict, found the plaintiff in error guilty as charged in the indictment, and that she be punished by confinement in the penitentiary for the term of fourteen years. Motions for new trial and in arrest of judgment were made, which the court overruled, and then gave judgment upon the verdict.

Of the numerous objections urged to the rulings below, as grounds of reversal, we deem it necessary to notice but three, and these will be passed upon in the order in which they arise upon the record.

*First*, did the circuit court of Logan county have jurisdiction to try the cause?

It is argued, on behalf of plaintiff in error, that the venue should have been changed either to Peoria, Marshall, Stark or Putnam counties, which are in the same judicial circuit with Tazewell, and that changing it to Logan county, which is in a different judicial circuit, was in violation of § 9, Art. 2 of the constitution, which provides, that, " in all criminal prosecutions the accused shall have the right to * * * a speedy

public trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

The objection is, in our opinion, based upon a misapprehension of the meaning of the word "district," as here used.

The plain object of this clause of the constitution is to secure to the defendant the common law right of trial by a jury of the *visne* or neighborhood where the offense is alleged to have been committed, and to protect him against prosecution elsewhere. The grand jury indicting, and the traverse jury trying, must be of the *visne;* and the court having jurisdiction is that which is, by law, invested with original authority to try such offenses. A party is no more subject to be indicted and tried for the alleged commission of an offense, in a different county in the same circuit, than in a county in a different circuit. The creation of judicial circuits has not the slightest reference to the enforcement of this clause of the constitution, but is solely for convenience in providing the requisite judicial force to administer the law throughout the State. The word "district" is convertible with that of "county," and is descriptive of the territory which, in legal contemplation, comprises the *visne,* over which the jurisdiction of the court for the purpose of prosecution for the commission of crimes and misdemeanors extends; and, although there may be many counties or districts in the same circuit, the court in each is entirely separate and disconnected from that in all the others, and its jurisdiction, within the meaning of the clause under consideration, is limited by its territorial boundaries.

The right secured by this clause is one that the defendant may waive, and the plaintiff in error here, when she petitioned for a change of venue, did waive it. *Perteet* v. *The People,* 70 Ill. 171, *Rafferty* v. *The People,* 72 id. 37, and *Bedee* v. *The People,* 73 id. 321, are cases where convictions on change of venue were sustained, and in which, had we not held that the court to which the venue was changed had jurisdiction, the ruling could not have been as it was. But the court has also held that the defendant is entitled to a change of venue, on a proper

showing, as a matter of right, which would be utterly absurd if the petition did not waive the right of trial in the county or district in which the offense is alleged to have been committed. *Rafferty* v. *The People*, 66 Ill. 118; *Brennan et al.* v. *The People*, 15 id. 511; *Clark* v. *The People*, 1 Scam. 117.

The statute provides, " when a change of venue is granted, it may be to some other court of record in the same county, or in some other convenient county to which there is no valid objection." (Rev. Stat. 1874, p. 1093, § 2.) Logan county adjoins Tazewell. So far as we can judicially know, or are informed by the record, that county appears to have filled the requirement of " some other convenient county to which there is no valid objection." The fact that in some other county a term of court may have been held at an earlier day, after the petition for the change of venue was presented, than the term was held in Logan county, we regard of no significance. The right to a speedy trial, guaranteed to the defendant by the constitution, is only against arbitrary and oppressive delays, and is in nowise violated or impaired by such delays as are induced by the lapse of time intervening regular terms of court, or as are inevitable in consequence of the amount of other criminal business having priority on the docket, or as shall be necessary, with proper efforts, to procure an impartial jury and the attendance of witnesses on behalf of the People.

The *second* objection questions the ruling of the court below in admitting, over the objection of the plaintiff in error, evidence of declarations of deceased, made at different times through a period of some ten years or more anterior to his death, out of the hearing of the plaintiff in error, and in no wise assented to by her, or even made known to her.

There is no pretense that any of these declarations come within the definition of dying declarations, or that they were admissible as part of the *res gestæ*. The deceased was not contemplating immediate death when any of them were made, nor was he, at the time, engaged in any act of which they were explanatory. They were either expressive simply of his own

state of feeling toward the accused, at the time, or narratives of past events.

In prosecutions of this character, a wide degree of latitude is allowable to the prosecution in order that the jury may be fully possessed of all the circumstances which may reasonably be presumed to throw light upon the transaction and tend to discover the perpetrator of the crime, and it is hence allowable to prove the existence of facts which experience shows may operate as motives to the commission of crime, such as the expectation of pecuniary gain, express malice, the gratification of lust, etc. And it has, accordingly, been held, where the husband or wife is charged with the murder of the other, competent to prove their mutual conduct towards and treatment of each other, as manifested by acts and words,—the fact that one is engaged in an illicit sexual commerce with, or has contracted a sexual passion for, another person, etc.; but, in general, proof in these respects must not be confined to mere hearsay.

The exceptions wherein the declarations of one party, not made in the presence or with the express or implied concurrence of another party whom they affect, are admissible in evidence, are limited, by the books, to dying declarations, declarations accompanied by and explanatory of acts, so as to form part of the *res gestœ*, evidence of general character, declarations as to present state of health, or expressive of condition of mind or state of feeling, etc., family pedigree, and ancient boundaries, monuments and other public matters falling under the same principle. Phillips on Evidence, vol. 1, (Cowen, Hill and Edwards' notes) chap. 8; Greenleaf on Evidence, vol. 1, chap. 5; 1 Wharton's Crim. Law, (7th ed.) p. 633; 2 Russell on Crimes, (7th Am. ed.) p. 750 *et seq.*; Roscoe's Criminal Evidence (5th Am. ed.) 22 *et seq.*

The declarations here given in evidence, to which objection is urged, are not claimed to be admissible on any other ground than as expressive of the state of health and condition of mind or state of feeling of the deceased. There was evidence ad-

mitted of what deceased said in regard to his having had a prior attack of disease of some character, the nature of which he did not entirely comprehend, and which was not said as explanatory of his then state of health, but merely as a narrative of a past occurrence, and this was clearly inadmissible. It is said in Phillips on Evidence, *supra*, p. 183: "When a patient enters into a history of his complaint, and relates some earlier symptoms experienced at a former period, he is giving a narrative from memory, rather than yielding to the impressions forced upon him by his situation; and it would seem, upon principle, that what he says respecting the earlier symptoms ought not to be received in evidence."

There was, also, evidence given, by several witnesses, purporting to recite statements made by the deceased, at different times, of conduct of the plaintiff in error that he had witnessed with other men, tending to show that she was unfaithful to her marital obligations, and of expressions of suspicions that he entertained in that respect. This evidence is claimed by the Attorney General to be admissible, upon the authority of Burrell on Circumstantial Evidence, p. 304. The text relied on is as follows: "So, where the relations existing between two persons show the existence of a feeling of animosity on the part of one of them against the other, especially where it has been exhibited in the outward conduct of the former, and its fears expressed by the latter on the score of his personal safety, an adequate source of the revengeful motive to crime will often be indicated with great clearness. And, in all these cases, considerable latitude is allowed in presenting evidence with the view of showing that the motive assigned did, in fact, exist."

But there is no evidence, here, showing a feeling of animosity on the part of the plaintiff in error toward the deceased, nor did the evidence to which objection is taken tend to show fears entertained by the deceased in regard to his personal safety. The text does not sanction the idea that the declarations of the deceased are competent to prove the state of mind

7—89 Ill.

or conduct of the plaintiff in error. This must be proved by competent evidence, and when this is thus proved, the declarations of the deceased are competent to prove his own state of mind when they were uttered. The conduct and declarations of the deceased, in connection with the conduct and declarations of the plaintiff in error, are, undoubtedly, competent evidence; but these declarations are neither responsive to nor explanatory of any present act or declaration of the plaintiff in error. They were narratives of what were claimed to have been past acts, in the absence and without the knowledge of the plaintiff in error, called forth by no word or act of hers, and followed by no act of his of which they are claimed to be explanatory, for the proof is uncontroverted that deceased and plaintiff in error continued to reside together with apparent amity and proper feelings towards each other, after as before these declarations were made.

The declarations prove that the deceased suspected that the plaintiff in error had not been faithful as a wife, but there is no proof that knowledge of such suspicion was ever communicated to her, and, without such knowledge, it violates every rule of logic and common sense to presume that they could, in any degree, have affected her conduct. If they could not have affected her conduct, the only purpose their proof could subserve would be to establish the fact that she was unchaste, and thus raise the inference that, being unchaste, she desired the death of the deceased as a removal of a barrier to the gratification of her lust; but the fact of want of chastity can not be established by hearsay evidence. Such evidence would be incompetent were only a question involved of pecuniary compensation for damage to her character—much more should it be held incompetent where the question affects life or liberty.

It was competent for the State to show the fact, if it existed, that the plaintiff in error was unchaste, in order to establish a motive which might operate upon her mind and induce her to take the life of the deceased; but she was entitled to face and cross-examine the witnesses to every circumstance of which

proof was offered tending to show that she was unchaste, and no fact or circumstance claimed to have that tendency could be proved by hearsay from one who was not himself sworn and examined as a witness to the matters detailed.

This evidence was improperly admitted, and we are unable to say that it may not have seriously prejudiced the plaintiff in error upon the trial.

The *third* and last objection which we deem of any consequence, is, that the court erred in giving the fourth instruction, at the instance of the People. This objection we also think well taken. The instruction is but an argument on the facts, and that, too, on a partial view of the facts. It is not the province of the court, in a criminal case, to express any opinion upon the facts, and this whether orally during the progress of the trial, or in the form of instructions when the evidence has all been heard. The court should state the law only, and leave the jury to judge of the facts. And especially is it objectionable for the court to express any opinion upon any combination of facts assumed or proved, which does not embrace every contrary hypothesis which the evidence tends to establish.

Aside from the errors pointed out, so far as we have been able to discover, the record is free of objection. Whether the evidence showed, with sufficient certainty, that the contents of the stomach analyzed by the chemist were those of the deceased, or whether they were or might have been tampered with, we regard as purely questions for the jury. Nor do we think the affidavits show such impropriety of conduct on the part of the jury, during the trial, as would authorize a court to interfere with their verdict.

For the errors indicated, the judgment is reversed and the cause remanded, and a *venire de novo* will issue.

*Judgment reversed.*