(No. 26731.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY E. MEISENHELTER *et al.,* Plaintiffs in Error.

*Opinion filed November 17, 1942—Rehearing denied Jan. 13, 1943.*

380

JOHN R. KANE, for plaintiffs in error Harry E. Meisen-helter *et al.;* KARNS & BANDY, and JOHN R. FITZGERALD, for plaintiffs in error Stewart C. Lorton *et al.*

GEORGE F. BARRETT, Attorney General, and IVAN J. HUTCHENS, State's Attorney, for the People.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

A jury in the circuit court of Macon county found plaintiffs in error, Harry E. Meisenhelter, Edwin Roy, Stewart C. Lorton, George Diehl and George Bruns guilty of the crime of malicious mischief. Motions for a new trial and in arrest of judgment were denied, judgment was entered on the verdict and they were sentenced to the penitentiary. They prosecute this writ of error to reverse that judgment.

The indictment in each of seven counts charges that plaintiffs in error and others therein named as defendants, on February 9, 1940, willfully, maliciously and feloniously injured, broke and destroyed a certain oil pipe line of the Texas Empire Pipe Line Company, a corporation, to the damage of the corporation in the sum of $5,000.

At the request of the prosecution a severance was granted to defendants Louise Schoof and Edward F. Foxx. The indictment as against Mack Ray and George E. Good was dismissed. Harry E. Meisenhelter, Edwin Roy and Stewart C. Lorton made motions for a severance and separate trials, which were denied. Plaintiffs in error with the remaining defendants were placed on trial and found guilty by a jury. A new trial was granted to Melvin E. Watkins and Cecil Wilson.

The pipe line injured was laid in the summer of 1939 and the early part of 1940. It extended through Macon county. It was laid with nonunion labor. Officials of unions representing various trades and crafts, doing the kind of work required in the laying of such a pipe line, endeavored to induce the construction company to employ union labor. Meisenhelter, business agent of the Decatur Local of the Common Laborers' Union, Lorton, as repre-. sentative of the Boilermakers' Union in Macon and other counties in Illinois, Ray, representing the Teamsters' Union, and other labor officials, met with Wilbur J. Holleman of Tulsa, Oklahoma, representing Williams Brothers Construction Company, at the office of Joseph J. Vincent, Labor Conciliator for the State of Illinois. No agreement resulted from this meeting and the pipe line in question was completed in January, 1940.

Between 7:00 and 8:00 A. M. on February 9, 1940, the pipe line was bombed at a point near Boody, in Macon county. No issue is made of the fact that the pipe line was injured by the use of an explosive placed by human hands and that a large quantity of oil was lost. The only

question of fact in this case is whether the defendants were the ones who bombed it or caused it to be bombed.

On July 16, 1941, the grand jury of Macon county returned two indictments, one charging plaintiffs in error and others with conspiracy to bomb, and the other with malicious mischief by bombing and injuring a pipe line of the Texas Empire Pipe Line Company. Soon after the return of those indictments Pearle Hoskinson pleaded guilty to the conspiracy indictment and asked for probation. The indictment before us was returned October 6, 1941. It charged malicious mischief, naming Meisenhelter, Foxx, Watkins, Roy, Wilson, Mack Ray, Schoof, George E. Good, Lorton, Diehl and Bruns, and charging the same bombing as the indictment returned July 16, 1941. It was dismissed as to Ray and Good, as stated. On December 4, 1941, on motion of the State's Attorney, the malicious-mischief indictment returned July 16, 1941, was *nolled*. Pearle Hoskinson was not named in the indictment of October 6, 1941. He was the principal witness for the People in the conspiracy case as well as the later case. Motions of plaintiffs in error Diehl and Bruns to be discharged from further custody on the ground that they had been in custody without trial for more than four months, were denied.

Testimony connecting plaintiffs in error with the crime was given largely by Pearle Hoskinson, whose testimony was substantially as follows: The executive board of the Common Laborers' Union met in June, 1939. Meisenhelter, Roy, Wilson, Watkins, Foxx and Hoskinson were present. Meisenhelter stated that as nonunion workmen were employed in the construction of the pipe line, it would be necessary to have a slush fund, to be obtained from initiation fees, dues and reinstatements of members, to be held out by Louise Schoof and turned over to Roy as custodian. The following day Roy, in the presence of Meisenhelter and Hoskinson, instructed Louise Schoof to hold out money from initiation fees, dues and reinstatements and give the

money to him, giving the members credit but destroying the stubs; to keep the records at home and keep track of the amount turned over to Roy. Meisenhelter stated to Schoof that this money was to be used for blowing up the pipe line. In July or August, 1939, Schoof, in the presence of Roy and Hoskinson, took two initiation fees of $50 each and delivered the money to Roy.

Hoskinson's testimony as to executive board meetings, the creation of the slush fund and agreement to blow up the pipe line, was corroborated by Roy, Wilson and Watkins. His testimony about the slush fund and Roy's instructions was corroborated by Louise Schoof. The State's evidence was further to the following effect: At a meeting of the executive board at which all members were present except George Cole, Meisenhelter said he was trying to get something done; that the slush fund was not building up very fast. Roy made a report of the amount then in the fund. In January, 1940, Meisenhelter and Hoskinson drove near the pipe line and picked out two spots where the pipe line could be blown. On their return Meisenhelter told Schoof they had picked out a spot. This testimony was limited to Meisenhelter. At the next board meeting, at which Meisenhelter, Foxx, Roy, Wilson, Watkins and Hoskinson were present, Meisenhelter stated the line was in Macon county and would be taken care of in a short time, and that Lorton was putting pressure on him to do something in this county. This statement was stricken as to Lorton.

The State's further evidence was to the following effect: On February 4, 1940, while Meisenhelter and Hoskinson were discusing the pipe line at Meisenhelter's house, Lorton, Bruns and Diehl came to the house. Lorton introduced Diehl as Jones and Bruns as Brown. Meisenhelter asked Lorton what he wanted with him and Lorton said: "We are ready to take care of that pipe line you wanted blown up." Meisenhelter and Lorton agreed it would cost $500.

Lorton said: "You get the $500 and have it ready and these fellows will be back up the first part of next week." The money was to be paid to Diehl and Bruns. Monday morning, February 5, Meisenhelter ordered a meeting of the executive board at his house that night. Roy, Foxx, Wilson, Watkins, Meisenhelter and Hoskinson were present. Meisenhelter said that Buck (Lorton) and some of the fellows were up from East St. Louis the day before and talked about blowing up the pipe line and Lorton was sending up two fellows the first part of the week to blow it up and it would cost $500. Roy said he only had $135 in the slush fund. There was evidence that Meisenhelter borrowed money from two different persons and later paid it back and that at a meeting on February 9 Meisenhelter said, in the presence of Foxx, Roy, Watkins, Wilson and Hoskinson, that "those fellows" came to his house about 2:00 A. M., went to the basement and made up the bomb, and left.

At approximately 8:00 A. M. of February 9, 1940, the pipe line was blown up, causing a loss of oil valued at $1150, and repairs to the pipe line cost $252.68. Statements of Roy, Watkins and Wilson, from which all names except that of the one making the statement were deleted, and in place of the deleted names the words "other persons" were substituted, were read to the jury. The court instructed the jury as to each statement that it was admissible only as against the defendant who made it and was not to be considered against any other defendant. Plaintiffs in error were sentenced to the penitentiary, Diehl and Bruns from one to ten years, with an advisory recommendation of a minimum term of eight years, Lorton and Meisenhelter from one to ten years, with an advisory recommendation of a minimum term of seven years, Roy to from one to ten years, with an advisory recommendation of a minimum of one year.

We will first discuss those assignments of error applicable to certain plaintiffs in error. Plaintiffs in error Diehl and Bruns insist it was error to refuse to discharge them under the statute requiring their release if not placed on trial within four months of their incarceration. They base this claim on section 18 of division XIII of the Criminal Code, (Ill. Rev. Stat. 1941, chap. 38, par. 748,) which provides: "Any person committed for a criminal or supposed criminal offense, and not admitted to bail, and not tried by the court having jurisdiction of the offense, within four months of the date of commitment, shall be set at liberty by the court, unless the delay shall happen on the application of the prisoner, or unless the court is satisfied that due exertion has been made to procure the evidence on the part of the People, and that there is reasonable grounds to believe that such evidence may be procured at a later day in which case the court may continue the cause for not more than sixty (60) days."

This statute was enacted to give practical effect to section 9 of the bill of rights, securing to the accused in a criminal prosecution a speedy public trial but which does not fix specific limitations. (*People* v. *Maniatis*, 297 Ill. 72.) The right to a speedy trial guaranteed to a defendant by the constitution is only against arbitrary and oppressive delays. (*People* v. *Maniatis, supra; Weyrich* v. *People,* 89 Ill. 90.) This court has repeatedly held, under this statute, that where the failure to try the defendant within the time prescribed by the statute, is occasioned by the defendant himself, the statute does not apply. *People* v. *Maniatis, supra; People* v. *Hotz,* 261 Ill. 239; *Healy* v. *People,* 177 id. 306; *People ex rel. Woodruff* v. *Matson,* 129 id. 591; *Dougherty* v. *People,* 124 id. 557.

The record in the instant case shows that plaintiffs in error Diehl and Bruns were arrested July 13, 1941, indicted July 16, 1941, for conspiracy and malicious mischief

and that on July 21, 1941, the State's Attorney, in open court, moved for a setting of the conspiracy and malicious mischief cases against plaintiffs in error for trial, to which plaintiffs in error objected. The record also shows that on July 30, 1941, August 15, 1941, and August 29, 1941, the People sought to secure a setting of these cases but either these plaintiffs in error, or other defendants with their knowledge, objected. By agreement, trial was later set for October 27, 1941. On that date Diehl and Bruns were in open court with counsel. When counsel for plaintiff in error Roy moved for a continuance because of illness of counsel, no objection was urged on their behalf. After the court asked if there were objections, the cause was continued to November 3, 1941, when the trial of the conspiracy case was begun, in which plaintiffs in error Diehl and Bruns were defendants. The trial lasted to and including November 20, 1941.

On November 8, 1941, the People moved that trial under the malicious-mischief indictment returned October 6, 1941, be set. By agreement this motion was continued until the tenth and again to the twelfth of November, when plaintiffs in error Diehl and Bruns asked to have the motion continued until the thirteenth. These facts show that from five days after the return of the indictments, the prosecution made repeated efforts to get both causes set for trial. The record shows with equal clarity that at the first attempt counsel for plaintiffs in error Diehl and Bruns objected and asked for more time. It is equally clear that at the hearings on the subsequent attempts to have the cause set for hearing, counsel for plaintiffs in error Diehl and Bruns were present and offered no objection to the motions of other defendants to continue. At no time did the People move for delay. We believe the record shows no neglect on the part of the prosecution to bring plaintiffs in error Diehl and Bruns to trial and the court did

not err in denying their motion for discharge under the four-months statute.

Plaintiffs in error Meisenhelter, Roy and Lorton insist it was error to deny their motions for a severance and for separate trials. Separate motions were filed prior to the trial. Each motion was verified and set forth that the indictment charged all of the defendants with the crime of malicious mischief consisting of the bombing of a pipe line; that in a conspiracy case tried in the same court against these same defendants, all were found guilty; that upon the trial of the conspiracy case the principal witness for the prosecution was one Pearle Hoskinson, one of the defendants in that case, who had pleaded guilty before trial and on the trial testified over objection to many prejudicial statements of other defendants including movants, out of their presence; that on the trial of the conspiracy case, signed statements in the nature of confessions allegedly made by named defendants, were admitted in evidence over objection, and though the names of others than the person making each signed confession were deleted by the court, the alleged connection with these defendants was clearly shown to the jury because of the oral undeleted testimony of witness Pearle Hoskinson previously admitted in evidence, in which the defendants making the motion were named in connection with the alleged confessions; that the prosecution intended to use the signed statements and testimony of said Pearle Hoskinson and the effect of the admission of such testimony would be to prejudice the defendant making the motion and to deprive him of a fair and impartial trial. The motions for severance were denied.

Plaintiffs in error, in contending this was prejudicial error, rely upon *People* v. *Cassler,* 332 Ill. 207, in which it was held that while the acts and declarations of one conspirator during the existence of a conspiracy are competent

evidence against his coconspirators, no act or declaration before the beginning or after the termination of the conspiracy may be given in evidence on a separate trial of a coconspirator. Reliance is also put upon *People* v. *Patris,* 360 Ill. 596, a case where a severance was denied, and on the trial conviction depended largely upon the testimony of police officers as to a coconspirator's confession to the police, out of the presence of and implicating Patris. The coconspirator who confessed orally to the police did not testify. The judgment of conviction in that case was reversed because the trial court abused the discretion vested in it in denying severance. The People reply that as plaintiffs in error did not show to the court how they would be prejudiced by a joint trial, they are in no position to complain of the denial of their motion, relying upon *People* v. *Minnecci,* 362 Ill. 541. The People also contend that the verified motion did not disclose that the defenses of plaintiffs in error were antagonistic. The People also cite *People* v. *Betson,* 362 Ill. 502.

The general rule is that persons jointly indicted shall be jointly tried. Except in those cases where fairness to one or more defendants requires that a severance be granted, the matter lies in the discretion of the trial judge and the question of abuse of such discretion depends upon the facts of each case. It is incumbent upon a defendant, moving for a separate trial, to show to the trial judge how he would be prejudiced by a joint trial. If he fails so to do, he cannot, on review, complain of the action of the trial court in denying his motion. (*People* v. *Minnecci, supra.*) Where defenses are antagonistic and one defendant accuses the other, thus making it impossible for the defendant asking for a severance to have a fair trial, the severance should be granted. *People* v. *Minnecci, supra.*

A motion for a severance must set out the grounds showing the reason for granting the severance. (*People* v. *Braune,* 363 Ill. 551; *People* v. *Minnecci, supra; Peo-*

*ple* v. *Paisley,* 299 Ill. 576.) The trial court passes upon the motion on the grounds advanced at the time it is made. (*People* v. *Braune, supra; People* v. *Hotchkiss,* 347 Ill. 217; *People* v. *Nusbaum,* 326 id. 518.) Any set of circumstances sufficient to deprive a defendant of a fair trial, if tried jointly with another, is sufficient to require a separate trial. (*People* v. *Minnecci, supra.*) The granting of a severance and separate trial is within the sound discretion of the court but it is a judicial and not an arbitrary discretion. *People* v. *Braune, supra; People* v. *Patris, supra.*

A reading of the motions for severance in this case discloses that in setting out the grounds for granting a severance, no showing was made that petitioner's defenses were antagonistic to the defense of the codefendant whose statements it was alleged would be offered in evidence. In this case each motion pointed out that on the trial of the conspiracy case in which each defendant was found guilty, the court deleted the name of the defendant making the motion for a severance, thus showing that the court in the trial of the conspiracy case protected each moving defendant. The motions did not point out that the witness Hoskinson, the key witness upon whose testimony the People relied for a conviction, was not a codefendant in the instant case.

In *People* v. *Siegal,* 362 Ill. 389, this court said: "Where two or more persons have been indicted jointly and one of them has made a confession a severance will not be permitted as a matter of right, nor will the court be influenced because some of the defendants may prefer to be tried separately from the others. The People's rights in criminal prosecutions are to be observed as much as the defendants' rights. Both parties are clothed with certain privileges and presumptions and they must be duly regarded. It would be unjust and unreasonable to universally permit separate trials of persons who are jointly charged with a

crime, and the better practice is not to permit it unless it shall appear from a showing made to the court that a denial of a severance would work prejudice to some one or more of the parties." Plaintiff in error Lorton took the stand and presented the defense of an alibi. Plaintiffs in error Meisenhelter and Roy did not testify. No defense antagonistic to that of the codefendants who made alleged confessions was interposed by plaintiffs in error making the motions for a severance. It was not error to deny their motions.

Plaintiff in error Lorton next contends that his conviction is based largely upon the testimony of Hoskinson, an ex-convict, an admitted accomplice and supplicant for probation, that he saw Lorton at Meisenhelter's home on the morning of February 4, 1940, with Bruns and Diehl. This Lorton denied and testified to his being at the Broadview hotel in East St. Louis at the time Hoskinson testified Lorton was at the home of plaintiff in error Meisenhelter. On cross-examination he admitted that he fixed the date as February 4, 1940, from recollections only. Five witnesses testified on direct examination that Lorton was at the Broadview hotel from 10:00 A. M. until 1:00 P. M. on February 4, 1940. On cross-examination one of the witnesses, Tirrell, admitted he was requested by Hess, another of the corroborating witnesses, to establish the date of the meeting as February 4, 1940, and that he tried from 11:00 o'clock to 6:00 o'clock the day previous to his testifying to find any record of a meeting of the Boilermakers or a rental of a room in that hotel by the Boilermakers, on that day, but failed to find such record.

The testimony as to Lorton's whereabouts on the morning of February 4, 1940, was conflicting. His whereabouts on that date presented an affirmative defense of alibi and the burden of establishing it was on him. The number of witnesses testifying for either the prosecution or defense is not of controlling importance. (*People* v. *Bloom,* 370

Ill. 144; *People* v. *Filas,* 369 id. 51.) The admissions of the several witnesses supporting the alibi, that they were not positive of the date or remembered it only after they were told by some other person, were matters which the jury doubtless considered in arriving at their conclusions as to Lorton's defense of alibi. We cannot say from the record before us that the jury was not justified in the finding against him on the issue of alibi.

Certain points and arguments are made which are applicable to all of plaintiffs in error. One is that the conviction being based upon the testimony of an accomplice, both the witness and his testimony are of a doubtful character and the record must be free of error to sustain the verdict and judgment thereon. The testimony of an accomplice is subject to grave suspicion and should be acted upon with great caution. (*People* v. *Harvey,* 321 Ill. 361.) It is also the rule, however, that a conviction may be sustained on the uncorroborated testimony of an accomplice. (*People* v. *Spira,* 264 Ill. 243.) This court has frequently held that the testimony of one witness, even though denied by the accused, may be sufficient to sustain a conviction. (*People* v. *Angelica,* 358 Ill. 621.) The suspicion attached to the credibility of the testimony of an accomplice goes only to the credibility of the witness, of which the jury is the sole judge. The jury evidently believed the testimony of the accomplice Hoskinson and not that of Lorton and his witnesses as to his alibi, and it must have believed his testimony as to the implication of the other plaintiffs in error in the conspiracy. No defense was interposed by any of the plaintiffs in error other than Lorton's denial and evidence offered to prove his defense of alibi.

Plaintiffs in error complain of rulings on evidence. They contend that the court erred in admitting the testimony of Hoskinson that Meisenhelter told him that Lorton was "putting pressure on him to do something about the

pipe line in Macon county." They argue that such statement, if made, was outside the presence of Lorton and all other defendants, and was therefore incompetent. The record shows the trial court sustained Lorton's objection to the statement and directed the jury to disregard that testimony so far as Lorton was concerned. Other testimony of this witness is objected to as not being made during the existence of the conspiracy. It is also contended that the admission of the statements, with the names of plaintiffs in error deleted, was error, as Hoskinson had identified each defendant and placed each of them in the alleged conspiracy.

The theory of the State is that plaintiffs in error, with others, conspired to have the pipe line blown up, and that the rule of proof of conspiracy authorizes the introduction of evidence as to the acts and declarations of the coconspirators, and there need be only such ancillary proof as is sufficient, in the opinion of the trial judge, to establish *prima facie* the existence of a conspiracy among the parties, citing 1 Greenleaf on Evidence, section 111. The rule that the conspiracy must be established *prima facie* before evidence of the acts and declarations of one conspirator can be received in evidence against another, is difficult of application where the proof of the conspiracy depends upon a large amount of circumstantial evidence and of isolated and independent acts, and it has been held that in a case where acts and declarations are introduced in evidence, and the whole of the evidence introduced on the trial, taken together, shows that such a conspiracy actually exists, "it will be considered immaterial whether the conspiracy was established before or after the introduction of such acts and declarations." (*State* v. *Weimer,* 17 Kans. 298.) It has also been held that the prosecutor may either prove the conspiracy, which renders the acts of the conspirators admissible in evidence, or he may prove the acts of the different persons, and thus prove the con-

spiracy. Roscoe on. Crim. Ev., 7th ed., 414-415, and cases cited.

Evidence is admissible to prove a conspiracy to commit the crime with which a defendant is charged although no conspiracy is laid in the indictment; and where a conspiracy is established, every act or declaration of any of the conspirators in furtherance of the common purpose is regarded as the act or declaration of each of them and may be proved against all. *People* v. *Levy,* 351 Ill. 110; *People* v. *Looney,* 324 id. 375; *Spies* v. *People,* 122 id. 1.

The several statements of plaintiff in error Meisenhelter to Hoskinson, testified to by the latter, if the jury believed they were made, though made in the absence of some of the plaintiffs in error, were clearly made in furtherance of the common purpose to destroy the pipe line, and were therefore competent and provable against the other members of the conspiracy, though not made in their presence. (*People* v. *Levy, supra; People* v. *Looney, supra; Spies* v. *People, supra; State* v. *Buck,* 194 Mo. 416; *People* v. *McKane,* 143 N. Y. 455, 38 N. E. 950; Wharton on Crim. Ev. sec. 700.) A conspiracy need not be proved by direct evidence of an express agreement to do the unlawful thing to be accomplished. The commission of the crime may be proved, not only by direct evidence but as well by inference from conduct which discloses a common design on the part of the accused to act together in pursuance of the common criminal purpose. (*Franklin Union No. 4* v. *People,* 220 Ill. 355; *Spies* v. *People, supra; People* v. *Flach,* 125 N. Y. 324, 26 N. E. 269.) Where the evidence shows that different persons have, by their acts, pursued the same object, often with the same means, one performing one part and another another part, with a view to the attainment of the same purpose, an inference may fairly be drawn that they were engaged in a conspiracy to accomplish that purpose. (*People* v. *Small,* 319 Ill. 437; *People* v. *Lloyd,* 304 id. 23; *Ochs* v. *People,* 124 id. 399; *Spies* v. *Peo-*

*ple, supra.*) It is not necessary that the conspirators should have met together or that all should be acquainted with one another. If one concurs in a conspiracy after it is formed, no agreement for such concurrence is necessary to establish his guilt. (*People* v. *Looney, supra; Spies* v. *People, supra.*) When a conspiracy is established, every act or declaration of any of the conspirators, in furtherance of the common purpose, is regarded as the act or declaration of each of them and may be proved against all. (*People* v. *Rudecki,* 309 Ill. 125; *Franklin Union No. 4* v. *People, supra; Spies* v. *People, supra; Knox* v. *State,* 164 Ind. 226, 73 N. E. 255.) Every transaction, therefore, between those persons entering into the conspiracy, was admissible in evidence to show the existence of the conspiracy or its furtherance.

Testimony admitted, over objection, of certain statements and occurrences after the commission of the crime, and after the conspiracy had terminated, was not admissible against plaintiffs in error not present, but we are unable to see wherein the error was sufficient to reverse the judgment. The competent evidence in the record fully justified the jury's verdict. None of the plaintiffs in error took the stand and denied participation in the conspiracy or the commission of the crime for which they were on trial, except plaintiff in error Lorton, as herein stated.

Complaint is made in the giving of People's instructions 3 to 9, inclusive, which were *verbatim* copies of each of the seven counts in the indictment, in that those instructions did not explain to the jury that the seven counts alleged only one crime; did not explain that the defendants had pleaded not guilty to the charges in the seven counts in the indictment and that the seven counts consisted of a naked charge and that the burden was upon the People to prove the charges contained in those counts beyond a reasonable doubt. Instructions are considered as a series. It is not necessary that each instruction state all

the law applicable to the case being tried. Other instructions apprised the jury of all the claimed omissions from the People's instructions complained of. Taken as a series the jury was fairly instructed and we find no error in giving instructions.

It is next contended that the act of 1941 authorizing the trial judge to make an advisory recommendation of minimum and maximum sentences, violates section 13 of article IV of the constitution. This court in *People* v. *Montana,* 380 Ill. 596, held that act unconstitutional, thus making further discussion unnecessary. Plaintiffs in error had a fair trial and were legally convicted. The judgment is reversed and the cause remanded to the circuit court with directions to enter proper sentences.

*Reversed and remanded, with directions.*