(No. 34737.—■■■■■■■■)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK PULASKI, Plaintiff in Error.

*Opinion filed November 26, 1958—Rehearing denied Jan. 22, 1959.*

FRANK A. KARABA, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, WILLIAM H. SOUTH, and FRANCIS X. RILEY, of counsel,) for the People.

Mr. JUSTICE HERSHEY delivered the opinion of the court:

Frank Pulaski, together with Leopold Olvera and Carl Vassallo, was indicted in January, 1956, in Cook County, on a charge of burglary. All pleaded not guilty, and Vassallo waived a jury trial. The three defendants were tried jointly, the jury finding Pulaski and Olvera guilty, and the court finding Vassallo guilty. The court entered judgment upon the verdicts and sentenced Pulaski to the Illinois State Penitentiary for a term of not less than ten years nor more than twenty years, Olvera for a term of five to twenty years, and Vassallo for a term of one to seven years. Frank Pulaski now brings this writ of error to review his conviction and sentence.

After waiver of jury trial by Vassallo, defendants Pulaski and Olvera moved for trial separate from Vassallo, on the ground that a bench trial of Vassallo simul-

taneous with their trial by jury would be prejudicial to them. Their motion was denied and the trial proceeded jointly, with a jury selected to try Pulaski and Olvera.

The record discloses that at about the hour of 4:00 A.M. on November 13, 1955, police officers Parker and Johnson responded to a radio call reporting a burglary in progress in the vicinity of Twenty-first and Laflin streets in Chicago. As the officers approached the scene they saw a car speed away without lights, and three men, who proved to be Pulaski, Olvera, and Vassallo, emerge from a doorway of the Edelweiss Brewery with a light. As these men ran toward the officers, Parker saw them drop a radio and a flashlight. The radio was later found to be tuned to police calls. The officers stopped the men, and directed them to raise their hands, whereupon it was discovered that they were each wearing gloves. Parker inquired what they were doing coming out of the brewery. Vassallo denied they had been inside. However, as officer Johnson moved closer with his drawn gun, Pulaski said, "Yeah, yeah, don't shoot."

Officer Parker entered the brewery and found a safe on its side with the back torn open, and a walk-in safe which had been forced open. He saw a bag about three and one-half feet from one of the safes, containing a crowbar and a drill about three feet long.

Frederick Von Altmann, the night watchman at the brewery, testified that while making his rounds about 4:15 A.M. on November 13, 1955, he heard voices, saw the bag and drill on the floor and the office vault open with Christmas presents scattered about. He called the police. He also heard footsteps run past on the street and on looking out saw three men run right into the police. He also heard an automobile drive away when he heard the running footsteps.

Police officer O'Connor testified that he and officer Lawler drove the defendants to the police station in a squadrol, and that they all wore gloves when they entered

the squadrol, but upon reaching the station they were no longer wearing gloves, although he did not see them remove the gloves.

Officer Lawler said he found two pairs of gloves in the squadrol after taking the prisoners into the station. Officer Hensen searched the prisoners at the station and found a pair of gloves in Vassallo's rear pocket and a lighter in Vassallo's front shirt pocket.

August C. Gomer, sales manager of the brewery company, whose office was on the second floor of the building, identified the lighter taken from Olvera as belonging to him. The general manager of the brewery, Charles W. Broughton, testified that the two safes were open and tampered with, and that a number of Christmas gifts and twelve to thirteen thousand dollars were removed.

The flashlight was never found, although the street near the brewery was later searched.

Officer Hensen testified that, in the presence of all three defendants and officers Larsen and Clark, he asked each defendant if he was in the premises of the brewery and asked Pulaski about the cigarette lighter, but none of the questions were answered. Upon the completion of Hensen's entire testimony plaintiff in error interposed an objection to the testimony regarding the silence of the defendants, and moved to strike such testimony and to declare a mistrial. The objection and motions were overruled.

Police officer Young investigated for latent fingerprints at the scene, but found none. He did find fabric marks on the window sill and on the safe. He took filings from the floor below the walk-in safe, some insulation and a piece of drill. Eugene Mayer and Daniel Jackson vacuummed the defendants' clothing. Claude Hazen, of the Crime Detection Laboratory, found the material vacuummed from the defendants' clothing to be similar to the safe insulation, which was cement and a silica product.

Defendant Olvera testified that he, Vassallo, and Pulaski went to a tavern at Twenty-second and Ashland in Chicago to meet one Robert Newman, who was to tell them where a dice game was to be held. Newman, who was not produced as a witness, was not there but they were told to go to Twenty-first Street, three blocks east of Laflin. As they walked down Laflin, he said they saw two men run from the Edelweiss Brewery to a car and drive off, and he saw them drop something. As they approached the brewery door Vassallo knelt and picked up something, then a squad car came around the corner and stopped, and the police arrested them. He denied he had been in the brewery. On cross-examination he said the tavern they visited was open after 3:00 A.M., and still had four or five people in it when they left at 4:00 A.M. He denied that any of the defendants had gloves or a radio.

Carl Vassallo, a defendant, stated that he worked at putting in a concrete foundation on November 12, 1955, went home and took a bath and put his work trousers back on. He said the three defendants went to the tavern at Twenty-second and Ashland about 3:15 A.M., to find a crap game and left about 4:00 to 4:15 A.M. He stated he saw some fellows run out of the brewery and pull away in a car. He thought there were four men. He saw them drop a few articles and he picked up a lighter. He was thereupon arrested. He denied that he was wearing gloves when arrested, or that any of the defendants had a flashlight.

James Graves testified that he was a general contractor in partnership with defendant Pulaski's brother, and that the three defendants worked for them. He stated he heard officer Parker say the defendants did not have gloves on nor have a radio as they approached him.

Pulaski moved for a directed verdict of not guilty at the close of all of the evidence, which was denied. The

jury retired and the court found defendant Vassallo guilty. The jury thereafter returned a verdict finding defendants Pulaski and Olvera guilty. Pulaski moved for a new trial and moved to arrest judgment, which motions were denied.

On May 1, 1956, Vassallo was sentenced for a term of not less than one nor more than six years. After denial of motion for new trial and arrest of judgment, the court was informed that Pulaski had a record and had been on probation for burglary. The court thereafter sentenced Olvera to the penitentiary for a term of five to twenty years, and sentenced Pulaski to the penitentiary for a term of ten to twenty years.

Pulaski now prosecutes this writ of error, urging as grounds for reversal (1) that the evidence failed to prove him guilty beyond a reasonable doubt, (2) that the admission of testimony relating to defendants' silence while in the custody of the police was prejudicial error, (3) that he was deprived of his constitutional rights of jury trial and due process by denial of his motion for separate trial, (4) that the denial of his right to interrogate the jury following return of their verdict violated due process, and (5) that the harsher sentence imposed on defendants who demanded jury trial violated his constitutional rights to due process and equal protection of the law.

In order to resolve the contention of plaintiff in error that he was not proved guilty beyond a reasonable doubt, we must examine the evidence produced. Plaintiff in error and his two companions were observed to emerge from the doorway of the Edelweiss brewery by two officers who were called to the scene to investigate a burglary in progress. The street into which they emerged was well lighted. The hour was about 4:15 A.M., they were running, and one of their number was found in the possession of a lighter which had been left on the desk of one of the brewery executives. One of them was seen to have dropped a radio which was tuned to police calls. They were wearing gloves

at the time of their arrest, of which they attempted to dispose. Their clothing was found to contain material similar to the insulation in one of the brewery safes which had been torn open.

Plaintiff in error attempts to rely on some variations in distance in the arresting officers' testimony, that he was not possessed of any of the missing merchandise or cash, that he was not possessed of the radio, flashlight or burglary tools, and that his fingerprints were not found at the scene. However, he ignores the fact that two officers saw him and his companions emerge from the brewery. As a defense, defendants contend they saw several men run from the brewery and enter a car which sped away, and that the fleeing men dropped some articles, among which was the cigarette lighter. But the arresting officers testified that they saw the car pull away from the brewery and were just then distracted by a light as three men emerged from the building. The watchman heard a car pull away at the same time that he heard running footsteps, and then saw the running men stopped by the police. These circumstances explain the failure to find the stolen money or merchandise on the defendants. The lack of fingerprints is accounted for by proof that the defendants wore gloves, and by the fabric marks found at the points of entrance to the brewery.

From the foregoing it is evident that the evidence is sufficient to sustain the verdict. The evidence is not so palpably contrary to the verdict, or so unreasonable, improbable, or unsatisfactory as to justify our entertaining a reasonable doubt, or our reversal of the jury which saw and heard the witnesses and could best determine their credibility. *People* v. *Lamphear,* 6 Ill.2d 346.

Plaintiff in error now contends that certain testimony was admitted relating to the defendants' silence while in police custody, which was prejudicial to him. During the direct examination of police officer William A. Hensen by the assistant State's Attorney, he testified, in response to

questions, that while in the detective room at the police station, in the presence of all three defendants, officer Larsen and sergeant Clark, each of these three defendants were asked if they had been in the brewery and each failed to answer, and that Pulaski failed to respond to questions concerning the cigarette lighter. Subsequently defendant Olvera, on cross-examination, was asked whether he had inquired, at the time of his arrest, as to what he was being arrested for, and he answered, "No." The defendant insists all of this testimony was received over objection.

Silence in the face of statements made in the presence of an accused, when he might and naturally would deny the accusation of guilt, may be received in evidence as an implied admission of guilt. However, when such charges are made under such circumstances that the accused is in no position to deny them, or if his silence is of such a character as does not justify an inference of guilt, his silence may not amount to an admission of the charges against him. (*People* v. *Bennett,* 413 Ill. 601.) Consequently, evidence of silence may be inadmissible upon proper objection. However, in the instant case plaintiff in error failed to object to officer Hensen's testimony at the time the questions were asked and the answers obtained, except that his counsel insisted that the questions be particularized and the persons referred to specified. The State completed its examination of Hensen, consisting of approximately ten record pages of testimony, before plaintiff in error raised this objection. In addition, only an objection to the form was interposed to the question asked of Olvera which is now complained of. By his failure to interpose proper objections in apt time, plaintiff in error waived any possible right to object, (if any existed) and he may not now claim prejudice. *People* v. *Trefonas,* 9 Ill.2d 92.

Plaintiff in error complains that the failure of the court to grant his motion for a trial separate from defendant

Vassallo, who waived a jury, deprived him of his constitutional rights of trial by jury and due process of law. He further urges that the trial of the defendants by a jury and by the court simultaneously was unknown to the common-law jury trial. Hence, his right to a jury trial as it existed at common law was violated. He also contends that such joint trial violates due process in that it is irregular, tends to prejudice the jury by their knowledge that one of the defendants waived jury trial, and because a judge has broader latitude in receiving evidence, in interrogating witnesses, and in commenting upon the evidence in a bench trial.

A review of the record discloses that the motion for severance was a mere general objection to the trial of defendants, Pulaski and Olvera, jointly with Vassallo, and asserted only that such a joint trial would be prejudicial to Pulaski and Olvera. No facts are specified to support the severance request. The attorney for plaintiff in error stated that he had no specific legal grounds for requesting a severance but wished to voice an objection to the procedure. A motion for severance must set out specifically the grounds showing the reason for granting a severance. Where there is no showing made that the defendants had antagonistic defenses, or that the circumstances involved would deny one or more defendants a fair trial, or where the motion fails to show to the trial judge how a defendant would be prejudiced, the court in its judicial discretion need not grant a severance. *People* v. *Meisenhelter*, 381 Ill. 378.

We have reviewed the record and fail to find wherein plaintiff in error was prejudiced by the joint trial in this case, nor does he specify any specific prejudicial conduct, action, or evidence. We can only conclude, therefore, that the trial court correctly exercised its discretion in denying a separate trial. The joint trial of defendants, where one has waived a jury is uncommon, but not unknown. (*Padron*

v. *United States,* (5th Cir. 1958) 254 Fed.2d 574.) This trial did not deny the constitutional rights of plaintiff in error to a jury trial or to due process of law.

The jury returned its verdict in open court finding Frank Pulaski guilty as charged. After the jury retired and prior to the return of its verdict the court found defendant Vassalo guilty. Upon return of the verdict, the attorney for Pulaski had the jury polled. He thereupon objected, stating that he would like to interrogate the jury as to whether they knew of the court's decision in regard to Vassallo. The court denied the interrogation, stating that there was no ground for such a question as the jury was at all times, after retirement for deliberation, in the custody of the bailiff.

It is the general rule that courts will not receive the affidavits or testimony of jurors who rendered a verdict, for the purpose of impeaching such verdict. (23 C.J.S. Criminal Law, § 1494, p. 1310.) This rule is applicable in this State. (*People* v. *Geisler,* 348 Ill. 510; *People* v. *Quinn,* 313 Ill. 351.) To have permitted the attorney for plaintiff in error to have so questioned the jury would necessarily have involved an attempt to impeach the verdict by testimony of the jury which rendered the same. The refusal of the trial court to permit such interrogation did not deprive Frank Pulaski of due process.

Finally plaintiff in error asserts that the imposition of a sentence upon him of from ten to twenty years in the penitentiary, and upon Olvera of from five to twenty years, while Vassallo received a sentence of from one to seven years in the penitentiary, demonstrated that the court discriminated against the defendants who rested upon their constitutional right to trial by jury. He thus insists that the court violated his rights to due process and equal protection of the laws.

It is clear from the record that defendant Pulaski had a criminal record and had been on probation for burglary. The

court could properly take these factors into consideration in sentencing this defendant. The sentences of all three defendants were well within the limits of punishment prescribed by statute. Ill. Rev. Stat. 1955, chap. 38, par. 84.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*