THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THEODORE JACKSON, Defendant-Appellant.

(No. 55685;

First District—March 10, 1972.

Sandy McCormack, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Zenon Forowycz, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was tried before a jury for the offenses of unlawful use of weapons (Ill. Rev. Stat. 1969, ch. 38, par. 24—1(a)(4))[1] and battery. (Ill. Rev. Stat. 1969, ch. 38, par. 12—3.) Defendant was acquitted on the battery charge but found guilty on the charge of unlawful use of weapons (carrying a concealed weapon). He was placed on three years probation, the first six months to be served in the County Jail.

On appeal defendant contends: (1) that the trial court erred in failing to direct a verdict after the State's case in chief as to the charge of carrying a concealed weapon; and (2) that his right against self-incrimination was violated when he was cross-examined as to the charge of carrying a concealed weapon.

At 8:30 P.M. on April 10, 1970, William Lewis was standing in front of a hot dog stand near 56th and Ashland Avenue. He had just left a group of friends across the street. Lewis saw the defendant leave a laundromat which was a few feet from the hot dog stand. Defendant was with his girl friend. She was walking on his right side. When defendant had walked about five feet past Lewis, defendant turned around and fired about four or five shots at Lewis, one of which struck him in the thigh. On direct examination Lewis stated that he saw defendant remove the pistol from his right pocket. On cross-examination Lewis testified that he never saw defendant "draw the gun." He could only see defendant's left side.

Richard Haggart was standing near a group of people across the street from the hot dog stand and laundromat during the relevant time. He knew William Lewis and had seen the defendant around the neighborhood. He saw defendant standing by the laundromat with his girl friend. He saw Lewis cross the street to the hot dog stand. Defendant walked past Lewis and then turned and pulled something out of his pocket. Haggart couldn't tell what this thing was until defendant shot it. He saw the gunfire flash. It was nighttime but it wasn't dark on the

---

[1] (a) A person commits the offense of unlawful use of weapons when he knowingly:

(4) Carries concealed in any vehicle or concealed on or about his person except when on his land or in his own abode or fixed place of business any pistol, revolver or other firearm; * * *.

street. On cross-examination Haggart stated that if the defendant had the gun in his hand at all times, his hand would have been in his pocket. When asked if defendant could have been holding the gun alongside of him, Haggart responded, "I would have seen it; I would have seen something."

Chicago police officer Ralph Bell testified that Ashland Avenue has four lanes. At 8:30 P.M. on the night in question it was dark outside but "there is plenty of lighting on Ashland because of the new lighting there, and the stores were well lighted."

After the court denied defendant's motion for a directed verdict on the charge of carrying a concealed weapon, defendant called Ardenna Allan as his witness. She testified that she was planning to marry defendant; that when they came out of her house to go to the laundromat she did not know defendant had a gun on him nor did she see a gun in his hand at the laundromat; that she was walking at his side; and that the first time she saw the gun was after defendant shot it. Defendant testified that he was carrying a pistol in his pocket that night; that he carried it in order to protect himself and his girl friend from Lewis and others in the area; "the area had been the subject of racial problems and fighting." Defendant further testified that he removed the pistol from his pocket at the time he left the laundromat. When he walked past Lewis, Lewis drew back a stick he was holding. Defendant fired at Lewis because Lewis tried to hit him with the stick. Lewis denied carrying a stick.

*Opinion*

■■ Defendant first contends that the court erred in failing to direct a verdict at the end of the State's case on the charge of carrying a concealed weapon. Defendant acknowledges the general rule that such error is waived by presenting a defense after the motion is denied. (*People v. Cross*, 40 Ill.2d 85, 90, 237 N.E.2d 437.) He argues, however, that an exception should be made where two offenses are joined for trial, and the defendant deems it necessary to present evidence to rebut the State's case as to one of the joined offenses (the battery charge here) but still wishes to contest the ruling on the motion for a directed verdict as to the other offense (carrying a concealed weapon here).

■■ We feel it is unnecessary to address ourselves to this argument because it is clear that there was sufficient evidence to justify the trial court's denial of defendant's motion for a directed verdict on the concealed weapons charge.

Defendant states in his brief that "there was no testimony whatsoever [in the State's case] directly relating to the issue of carrying a concealed weapon." But the contrary is true.

Richard Haggart gave the following testimony:

"[Defendant] started walking towards 55th, and then he [defendant] turned around and pulled something out of his pocket. I couldn't tell [what this article was] until he shot."

Later the following testimony was given:

"Q: He couldn't have had a gun in his hand?

A: It could have been in his hand but it would have been in his pocket.

Q: He couldn't have had it alongside of him?

A: I would have seen it. I would have seen something."

The court relied on Haggart's testimony in denying defendant's motion for a directed verdict. After argument on the motion, the court stated:

"Well, Richard Haggart did testify that [defendant] pulled it [the pistol] out of his pocket. That is sufficient."

The two cases cited by defendant in support of his argument that his motion for a directed verdict should have been granted have significant factual dissimilarities from the instant case. As noted in *People v. Liss*, 406 Ill. 419, 94 N.E. 320, concealment is the essence of this offense, and in both of the cited cases proof of this element was completely lacking. In *People v. Beason*, 342 Ill.App. 621, 97 N.E.2d 603, it was uncontroverted that the first time the witness saw the gun it was in open view in the hand of the defendant. Immediately after the shooting the weapon was lying alongside the victim, again in open view. There was no evidence that the weapon was ever concealed. In *People v. Gregor*, 359 Ill. 402, 194 N.E. 550, defendant was found in Indiana with a gun concealed in his coat. In order to prove that the venue was proper, the State had to show concealment of the gun in Illinois. The only evidence it presented was that the defendant had fired several shots from the gun while in Illinois. The court stated that there was no evidence that the gun had been concealed on or about defendant's person while he was in Illinois and it would have been pure conjecture to assume that fact.

We find no error in the denial of defendant's motion to direct a verdict at the close of the State's case.

Defendant's other contention is that his right against self-incrimination was violated when he was cross-examined as to the charge of carrying a concealed weapon. In support thereof he espouses three theories. First, he argues that the failure of the court to direct a verdict on the concealed weapons charge forced him to take the stand and thereby incriminate himself as to that charge in the course of defending himself against the battery charge. This argument has been disposed of by the

first portion of this opinion wherein we concluded that the court properly denied defendant's motion to direct a verdict.

■■ Second, defendant argues that the questions asked on cross-examination were outside the scope of those asked on direct. Specifically, defendant notes that his direct examination extended only to those facts surrounding the circumstances whereby defendant felt it necessary to carry a gun in order to protect himself and his girl friend against Lewis and others; the fact of where he carried the gun, *i.e.*, concealed or not concealed, was not discussed; and therefore his right against self-incrimination was violated when he was cross-examined concerning the concealment. This argument may be briefly disposed of by noting that defendant failed to object to the allegedly improper set of questions. As the court stated in *People v. Thompson*, 48 Ill.2d 41, 45, 46, 268 N.E.2d 369, 371:

"Objections to evidence may be waived by failure to interpose proper objections in apt time, even though based upon constitutional grounds. [Cited cases omitted.] * * * The salutary consequence of the waiver rule is that 'A party cannot sit by and permit evidence to be introduced without objection and upon appeal urge an objection which might have been obviated if made at the trial.'" *People v. Trefonas*, 9 Ill.2d 92, 98.

■■■ Third, defendant argues that the failure of the court to sever the two counts in the indictment (carrying a concealed weapon and battery) forced him to incriminate himself as to the charge of carrying a concealed weapon. In support thereof he cites *United States v. Cross* (D.C. Cir. 1964), 335 F.2d 987, wherein it was held that the trial court's failure to sever two counts in an indictment, each count involving crimes clearly distinct in time, place and evidence, was an abuse of discretion under Rule 14 of the Federal Rules of Criminal Procedure. The court specifically refrained from deciding whether the trial court's action violated defendant's right against self-incrimination although this factor was relied on in the court's determination that the motion for severance should have been granted.

However, in *Cross* prior to trial defendants filed a written motion to sever alleging that the two counts charged "distinct felonies not provable by the same evidence and not resulting from the same series of acts." In the instant case defendant failed prior to trial to properly inform the court of the dilemma he allegedly faced if the two counts were not severed. No written motion for severance was filed. After both parties answered ready for trial, the court asked if there were any objections to consolidating the charges since they arose out of the same transaction. Defense counsel stated:

"There are some difficulties of proof to have them  *  *  *   It would be more applicable to be tried separately."

Several moments later he further stated:

"Your honor, there is a question of justifiable use of force, and there may be some problem with presenting fully the Defendant's case because of the nature of the offense of carrying a concealed weapon."

The court responded:

"[I] can see of no specific prejudice that would arise out of doing this to the Defendant, and insofar as these facts which would constitute one or the other of the offenses would be admissible in a trial of the other. So I will order these consolidated for trial."

No further response was made by defense counsel.

We think the following language from *People v. Pulaski*, 15 Ill.2d 291, 299, 155 N.E.2d 29, 33, is applicable:

"A review of the record discloses that the motion for severance was a mere general objection to the trial of defendants,  *  *  *. No facts are specified to support the severance request.  *  *  *  A motion for severance must set out specifically the grounds showing the reason for granting a severance.  *  *  *  [W]here the motion fails to show to the trial judge how a defendant would be prejudiced, the court in its judicial discretion need not grant a severance." *People v. Meisenhelter*, 381 Ill. 378.

Defendant's first claim that a failure to sever would violate defendant's right against self-incrimination was made in his post-trial motion. In *People v. Rhodes*, 41 Ill.2d 494, 498, 244 N.E.2d 145, 147, the court stated:

"[H]e [defendant] is now arguing matters which were first raised in his post-trial motions. Such motions are irrelevant and no substitute for pre-trial demonstration of why justice demands a severance."

We believe that defendant's failure to specifically set forth his grounds before the trial court precludes him from now claiming that the failure to sever violated his right against self-crimination.

In closing, we might add that there was overwhelming evidence, other than defendant's admission, that he carried a gun concealed in his pocket on the night in question. Richard Haggart stated with certainty that he saw defendant pull a gun out of his pocket after defendant walked by Benjamin Lewis. His testimony is circumstantially corroborated by the testimony of Ardenna Allan, defendant's girl friend. She stated that she was with the defendant from the time he reached her house until the shooting. At no time prior to the shooting did she notice that defendant was carrying a weapon, even though she walked alongside of him. She did not see the pistol until defendant fired the shots.

704

This corroborates Haggart's testimony that defendant had carried the pistol in a concealed manner.

The decision of the circuit court is affirmed.

Judgment affirmed.

LORENZ, P. J., and ENGLISH, J., concur.