(No. 23164.— )

. THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LEO MINNECCI, Plaintiff in Error.

*Opinion filed February 14, 1936—Rehearing denied April 8, 1936.*

WM. SCOTT STEWART, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and RICHARD H. DEVINE, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Leo Minnecci was by a jury in the criminal court of Cook county convicted of murder and sentenced to the penitentiary for 199 years. He was tried jointly with Eleanor Jarman and George Dale for murdering Gustav Hoeh, a haberdasher, during an armed daylight robbery of his store. Eleanor. Jarman's sentence was 199 years and Dale was given the death penalty. As to the latter we affirmed the death sentence in *People* v. *Dale,* 355 Ill. 330. Plaintiff in error, Minnecci, was granted leave to withdraw the record in the *Dale case* and has re-filed it, with a new abstract, in this cause. He does not present any of the issues that were before us in *People* v. *Dale, supra.* The contentions here presented are, (1) that the trial court erred in overruling plaintiff in error's motion for a new trial, after it had denied his motion for a severance, because the evidence disclosed that plaintiff in error was prejudiced by a joint trial; (2) that it was improper to admit in evidence before the jury trying this defendant, statements made by his co-defendants; (3) that evidence of other offenses was not admissible against plaintiff in error although properly admissible against Dale; and (4) that Minnecci was not proved guilty beyond a reasonable doubt.

Our decision in *People* v. *Dale, supra,* determined that Gustav Hoeh was slain by Dale in the course of a robbery. We shall here set forth only so much of the testimony as is necessary to a consideration of the errors assigned.

After the killing, Dale, Jarman and Minnecci were arrested and all admitted being present at the time of the killing. The only direct evidence that Minnecci participated in the killing of Hoeh is that of Dale and Jarman. Dale testified that he went with Jarman and Minnecci to the store of Hoeh on August 4, 1933, for the purpose of buying a shirt. An argument started over the shirt and there was a scuffle, in which the three men engaged.

According to Dale, Jarman did not have anything to do with the scuffle. A shot was fired, but Dale said he did not know who fired it. He denied having a gun and did not know whether Minnecci or Hoeh had one. On cross-examination Dale testified that Minnecci had no money and Dale had to furnish him $2.50 to take Minnecci to his brother-in-law's to get a wound in his hand cared for after the shooting.

Eleanor Jarman testified that the trio entered the store to buy shirts; that an argument started; that in the course of a scuffle a shot was fired, and someone said, "Hurry to hell out of here!" In the course of their flight their automobile license number was obtained. The car belonged to Minnecci's brother. Minnecci's hand was bleeding profusely, so they abandoned the automobile and went to Jarman's apartment. Minnecci said he would bandage his hand and then see what could be done. He told Jarman to telephone his wife and tell her to get the keys to the car in which they had been riding and to tell his wife that he was in trouble. He instructed Jarman to tell his wife that if the police should come his mother should tell them that the car was at home when his brother came home for lunch and for her to say that someone must have stolen it. He told her not to say that Minnecci had taken it. A short time later Minnecci told Jarman to call his wife and have her bring him some pants and a clean shirt, "because these pants are all full of blood." When his wife answered she said, "The cops are here," and hung up. Jarman went back up-stairs and told Minnecci that the cops were in his house, and Minnecci said, "It looks like you were going to have a boarder for a while." She told him to go to his relatives, because she had no room for him. Dale then told him he had better see a doctor about his hand, and Jarman wrapped it up in bandages made from an old dress.

Minnecci did not testify at the trial, but his statement to the police was admitted in evidence against him after

references to Jarman and Dale had been deleted. This statement was self-serving to a very great degree. He admitted being in the store for the purpose of buying a shirt, but stated that when he saw Dale draw a gun on Gustav Hoeh he tried to intervene and protect the old man, and Dale hit Minnecci with the butt of the gun across the right hand and shot him, either intentionally or accidentally, in his left hand. He repeated this version of his part in the hold-up several times at the police station.

Without objection the People also introduced in evidence a combined statement taken by the police from the three defendants. The combined statement was substantially in accord with the testimony of Dale and Jarman and with Minnecci's individual statement. All three insisted their purpose was to buy a shirt and that robbery was not intended. Minnecci insisted that the trio entered the store for the purpose of buying a shirt but that Dale tried to rob the proprietor at the point of a gun and he tried to protect him. The People also proved that the defendants had been seen together in other places of business within a short time preceding the date of the killing, and one witness testified that Dale had a gun on one of these occasions. This evidence was educed to prove association. No attempt was made to show that they had been guilty of other crimes, and, when this evidence was introduced, Minnecci's then counsel said, "I have not made any objection," when the court said, "The same objection pertains to Minnecci." From our re-examination of the record we are of the opinion that it shows, beyond all reasonable doubt, that all three defendants entered the store where the killing took place for the purpose of robbing it, that Hoeh was killed in the commission of a felony, and that plaintiff in error was proved guilty according to law.

As stated, defendant claims he should have been granted a separate trial. A motion for a severance was made, but it does not appear that a showing in support of the motion

was made to the trial court. The general rule is that persons jointly indicted shall be jointly tried, (*People* v. *Birger,* 329 Ill. 352,) and it is only in those cases where fairness to one or more defendants requires it that a severance is imperatively required. The determination of this question is governed by the facts in each case and the motion is addressed to the sound discretion of the trial judge. (*People* v. *Lehne,* 359 Ill. 631, 649; *People* v. *Kelly,* 347 id. 221.) Any set of circumstances which is sufficient to deprive a defendant of a fair trial if tried jointly with another or others is sufficient to require a separate trial, and, on the other hand, any reasons falling short of· this measure do not make a severance necessary. In the absence of a showing to the trial court as to how the defendant would be prejudiced by a joint trial he is not in position to complain of the action of the trial court on writ of error. However, we have examined this point on its merits. The rule is, that where there is more than one defendant and the defenses are antagonistic, and one defendant accuses the other, so that it will be impossible for the defendant who asked a severance to have a fair trial, the severance should be granted. The defendants Dale and Jarman neither in their joint statements nor on the trial accused Minnecci of guilt. They asserted that all three were there for the purpose of buying a shirt and that a scuffle started. Minnecci in his statement said that they went into the store to buy a shirt but that Dale tried to rob the proprietor after they entered the store. The disagreement in their accounts of what happened is not vital. The trial court did not err in denying Minnecci's motion for a severance, and because he was not prejudiced by a joint trial there was also no error in overruling the motion for a new trial.

It is contended that the admission of testimony as to other offenses perpetrated by Dale was prejudicial to Minnecci. No other crimes were mentioned, and, as we have

pointed out, Minnecci's then counsel did not object to this evidence. Minnecci is in no position to urge this as a ground for reversal of the judgment.

Minnecci says that it was error to admit the statement of Jarman and Dale against him. No objection is shown to have been made to this statement and he is not in position to raise the point. It was made in the presence of Minnecci, and he agreed that all the statements were made voluntarily. The statement was properly admitted in evidence.

We are aware that where the jury fixes the penalty the record must be free from attempts to prejudice the jury, (*People* v. *Blockburger,* 354 Ill. 301,) but this record discloses that Minnecci was accorded a fair trial.

The judgment of the criminal court is therefore affirmed.

*Judgment affirmed.*