THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALBERT DAVIS, Defendant-Appellant.

First District (2nd Division)    No. 61738

---

Opinion filed October 26, 1976.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes and Suzanne M. Xinos, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Robert Handelsman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Albert Davis (hereinafter defendant) was indicted for the offenses of armed robbery and attempt murder.[1] Following a jury trial in the circuit court of Cook County, he was found guilty of attempt murder (Ill. Rev. Stat. 1971, ch. 38, par. 8—4) and sentenced to a term of 10 to 30 years. Defendant contends on appeal: (1) he was denied a fair and impartial trial; (2) he was not proved guilty beyond a reasonable doubt; and (3) the sentence imposed was excessive.

At 4 a.m. on August 4, 1973, the complainant, Rafael Negron, had been drinking beer in a Chicago bar for approximately seven hours. As the bar closed at 4 a.m., he was approached by men whom Negron identified as co-defendant John Huff and defendant. The men suggested having another drink, and the three went to an apartment where Negron's friends lived. Negron, Huff, defendant, and several of Negron's friends drank wine there for about four hours. At that point defendant said he had to pick up his paycheck from the factory where he worked. The three men

---

[1] Albert Davis and John Huff were separately indicted. On motion of the State and agreed to by Huff and Davis, the cases were consolidated. The matter pertaining to John Huff is not before us in this appeal.

walked to the factory and defendant went inside. After defendant returned with his check, he cashed it in a currency exchange and the three continued walking. Defendant then bought more wine and cigarettes which the trio shared.

The group then proceeded to Negron's apartment where Negron noticed the building manager, Darrell Sloan, when they entered. Upon entering the apartment, defendant went to the washroom, Huff and Negron into the living room. The next thing Negron remembered was Huff standing in front of him with a pint of wine and hitting him in the face with the bottle. Reeling from the blow, Negron leaned against a chair. He thought defendant was behind him and he felt something hard in his back like a knife. As Negron fell to the floor, Huff stood in front of him with a small knife in his hand. Huff then tied Negron's feet and stabbed him in the chest. Defendant tied Negron's hands and Huff asked where the money was. Learning that Negron had no money, Huff took his ring and watch. Defendant stood in front of Negron with a knife during this period and stated that he had to kill Negron so that he could not recognize anyone. When Negron's dog started barking, defendant said that he and Huff should leave the apartment.

After they left, Negron crawled over and pulled down the telephone, screaming for help. At this time the manager, Sloan, on duty at the front desk, noticed that the telephone terminal for Negron's apartment was lit up. Sloan heard the screams when he plugged into the terminal. Sloan then proceeded toward the elevator, where he observed the two men who had come in earlier with Negron. When the men exited the front door, Sloan immediately called the police.

Officer Allan Janito, responding to the call, found a man lying on the apartment floor bleeding and bound. Janito also found two knives near the elevators. Negron was taken to the hospital where Investigator John Eshoo unsuccessfully tried to converse with him in the emergency room.

When Negron was released from the hospital a week later, Eshoo and Officer McCracken successfully interviewed him at his apartment. Negron and the police officers then drove to the factory where defendant had picked up the check. As the officers entered the factory, Negron remained in the automobile. Later Negron entered the factory and viewed five males. He recognized none of them. When he returned to the automobile, Negron saw defendant on his way to work and informed Officer McCracken of that fact. Defendant was then taken into custody. Eshoo testified that upon being taken to the police station and informed of his rights, defendant stated he had tried to "help" Negron and that he had "held" Negron but had not stabbed him.

During his later investigation, Eshoo observed a man who fit the description of the second suspect. The man was Huff, who was stopped,

informed of his rights, and then arrested. Huff also gave an oral statement to the police. Eshoo testified that Huff said that he had been in the apartment, had held Negron, but had not done any stabbing. Negron later identified Huff at a lineup.

Prior to the trial, defendant filed a motion for severance, alleging that Huff's statement might be introduced against him. In response to the motion, the State represented to the trial court that any statement by Huff which included defendant in any inculpatory manner would not be testified to and would be deleted from the testimony. The motion for severance was then denied and Huff and defendant were tried together in a joint trial.

Both defendants testified at the trial. Huff acknowledged that he, Davis, and Negron had been drinking; and that before traveling to the factory, the group had stopped at the residence of Huff's friends and also at Negron's apartment where Negron took a shower. Further, upon discovering that the currency exchange was not yet open, Negron, defendant, and Huff drank more wine outside the apartment of Huff's mother. Huff also testified that the group then returned to Negron's apartment where they drank more wine; that as Negron sat with his eyes closed in a chair propped against the wall, Huff and defendant departed; and that three men got off at Negron's floor when he and defendant entered the elevator. In response to police questioning upon his arrest, Huff stated that he did not think defendant had stabbed Negron because the complainant was fine when he and defendant left together. Lastly, Huff denied ever telling Eshoo or any other police officer that he had held Negron while defendant stabbed him.

Defendant testified that, upon the group's return to Negron's apartment, he went into the kitchen for a glass of water and then heard breaking glass and moaning sounds. When he got to the living room, Negron's face was bleeding and Huff had a knife. He saw Huff stab Negron twice and he then stepped forward and kicked the knife out of Huff's hand. Huff pulled out another knife but dropped it. Defendant then exited the building by the stairs rather than by the elevator. Defendant further testified that, when he (defendant) had been arrested, Negron had stated that defendant was with the man who had stabbed him; that Negron had then told defendant that, if defendant identified the other man, Negron would not blame defendant; that he told both officers that he had tried to "help" Negron; and that he never said he had "held" Negron.

## I.

■■ On appeal the State contends that many of the issues raised by defendant are not properly before us because the written motion for a

new trial was not sufficiently specific to prevent a waiver. The controlling Illinois statute requires that a motion for a new trial be in writing and specify the grounds. (Ill. Rev. Stat. 1973, ch. 38, par. 116—1(b), (c).) The general rule is that failure to raise issues in a written motion for a new trial constitutes a waiver thereof and precludes a defendant from raising the issues on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856; *People v. Hairston* (1970), 46 Ill.2d 348, 367, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658.) On the other hand we have the authority to notice "plain errors or defects affecting substantial rights" even though "they were not brought to the attention of the trial court." Ill. Rev. Stat. 1973, ch. 110A, par. 615.

In the instant case defendant's counsel clearly indicated that he was unable to secure the trial transcript and, therefore, set out certain conclusions in his motion. The errors pertaining to defendant's alleged denial of a fair and impartial trial were raised generically in paragraph 11:

"11. The trial court erred in failing to sever the two causes of action which were consolidated on motion of the State's Attorney which was objected to prior to trial."

This allegation is specific enough to avoid the potential harshness of the strict application of waiver. Similarly, paragraphs 1 and 7 of the motion, wherein defendant states his claims that he was not proved guilty beyond a reasonable doubt and that he was denied a fair and impartial trial, are sufficiently specific. We agree that under certain circumstances waiver may apply; however, for the reasons stated, we think the instant motion for a new trial substantially covers the points here raised for our review.

## II.

Defendant maintains that he was denied a fair and impartial trial for two reasons. First, he argues that Huff's defense was antagonistic to his own and, thus, refusal to sever the causes was error. Second, he argues that the State's use, during direct examination of Officer Eshoo, of Huff's statement inculpating defendant was further error. Although these contentions are related, we will respond to each separately.

## A.

Separate trials are required when the defenses of the several defendants are so antagonistic that a fair trial can be assured only by a severance. (*People v. Brooks* (1972), 51 Ill. 2d 156, 166, 281 N.E.2d 326; *People v. Henderson* (1st Dist. 1976), 39 Ill. App. 3d 164, 168, 351 N.E.2d 225.) The decision as to whether separate trials should be granted is a matter for the trial court's discretion. (*People v. Canaday* (1971), 49 Ill. 2d 416, 424, 275 N.E.2d 356; *People v. Morrow* (1976), 40 Ill. App. 3d 1020, 353 N.E.2d 354.) In the case at bar defendant contends that failure to sever the two causes denied him a fair and impartial trial. A severance must be ordered

where the circumstances are such that a defendant will be deprived of a fair trial if jointly tried. *People v. Gendron* (1968), 41 Ill. 2d 351, 356-57, 243 N.E.2d 208, *cert. denied* (1969), 396 U.S. 889, 24 L. Ed. 2d 164, 90 S. Ct. 179.

Upon the pretrial discovery that Huff had allegedly made an oral statement implicating him, the defendant, prior to trial, filed a written petition for severance. Defendant also asserted "* * * that the defense of John Huff is antagonistic with your petitioners * * *." After a hearing, at which the attorney for Huff did not join in the petition, upon the representation by the State "* * * that any statements made by Mr. Huff including Mr. Davis in an inculpatory manner will not be testified to and will be deleted from any testimony," the trial court denied the severance. As far as we can tell from the record, the defendant made no other suggestion—or presented any facts—as to how or why the defenses of defendant and Huff were antagonistic.

At all times in the trial court and before this court, defendant maintained that severance was required on the authority of *People v. Wheeler* (1st Dist. 1970), 121 Ill. App. 2d 337, 257 N.E.2d 587. In *Wheeler* admissions of co-defendant McCaskill were judged harmful to defendant Wheeler. When the co-defendant was arrested, he had stated, "It [shotgun] doesn't belong to me, it belongs to Bull, he told me to pick it up and make it." A police officer then testified to the admission and the identification of the defendant as "Bull." Wheeler's conviction was reversed for failure to order a severance, notwithstanding that his counsel had not requested such a severance. In *Wheeler* this court analyzed the record and found serious prejudice to the defendant. Here defendant contends that the determinative facts in *Wheeler* are almost identical to those in the instant case because both cases involve police officers testifying to the receipt of statements made by co-defendants. In *Wheeler* it was the co-defendant's statement which served to prejudice the defendant. Here Huff's statement, as testified to by Eshoo, does not mention a second person; only Negron's statement incriminates defendant. In fact, Huff testified on direct examination that he did not believe defendant had stabbed Negron because he and defendant had left together and Negron was fine at that point. Huff went further and testified that three men exited the elevator at Negron's floor—apparently implying that the strangers might have been responsible for the stabbing. At any rate, in our opinion, Huff's statement as testified to by Eshoo does not prejudice defendant. On the other hand, Eshoo testified, as to Negron's statement, that when Negron identified Huff at a lineup, he identified him as being the second person who stabbed him. We shall develop the importance of this distinction in the next portion of our opinion.

■■ Our supreme court has said numerous times that in determining

whether a severance should be granted, the primary question is whether the defenses of the defendants are so antagonistic that a fair trial can be assured only by a severance. (*People v. Canaday* (1971), 49 Ill. 2d 416, 424, 275 N.E.2d 356; *People v. Yonder* (1969), 44 Ill.2d 376, 386, 256 N.E.2d 321, *cert. denied* (1970), 397 U.S. 975, 25 L. Ed. 2d 270, 90 S. Ct. 1094; *People v. Gendron* (1968), 41 Ill. 2d 351, 356-57, 243 N.E.2d 208, *cert. denied* (1969), 396 U.S. 889, 24 L. Ed. 2d 164, 90 S. Ct. 179; *People v. Henderson* (1967), 37 Ill. 2d 489, 492, 229 N.E.2d 519, *cert. denied* (1967), 389 U.S. 943, 19 L. Ed. 2d 297, 88 S. Ct. 305; *People v. Brinn* (1965), 32 Ill. 2d 232, 245, 204 N.E.2d 724, *cert. denied; Clements v. Illinois* (1965), 382 U.S. 827, 15 L. Ed. 2d 72, 86 S. Ct. 62; *People v. Betson* (1936), 362 Ill. 502, 508, 200 N.E. 594.) Before the trial commenced defendant informed the trial court of Huff's alleged oral statement and the assertion of alleged antagonistic defenses. As to the oral statement, the State advised the trial court that any references to defendant would be deleted. Based on this representation, the trial court did not have to grant a severance because of the oral statement. (*People v. Brooks* (1972), 51 Ill. 2d 156, 166, 281 N.E.2d 326; *People v. Clark* (1959), 17 Ill. 2d 486, 490, 162 N.E.2d 413.) As we have previously noted, the allegation of "antagonistic defenses" is not supported by the facts. It is nothing more than a conclusion. Mere apprehension that defenses may prove antagonistic without a showing that such apprehensions are well founded is an insufficient ground for severance. (*Yonder*, at 386.) We find nothing in the record to indicate the trial court abused its discretion in denying the severance.

Although we have found no Illinois case defining the term "antagonistic," Webster's Third New International Dictionary defines it as "characterized by or resulting from antagonism: marked by or arising from opposition, hostility, antipathy, or discord." Huff testified and was available for cross-examination by defendant. Huff testified that neither he nor defendant stabbed Negron. Huff also denied making any statement to Eshoo. On the other hand, defendant testified that Huff stabbed Negron. Though the defenses contradicted, Huff was helpful to defendant, not antagonistic. To be antagonistic there must be a showing of true conflict in the several defenses; for example, where each defendant attributes the cause of an accident to the wrongful actions of the other (*People v. Clark* (1972), 50 Ill. 2d 292, 294, 278 N.E.2d 782); where each defendant condemns the other and each declares the other will testify to facts exculpatory of himself and condemnatory of his co-defendant (*People v. Braune* (1936), 363 Ill. 551, 555, 2 N.E.2d 839); where the co-defendant's confession implicating defendant is received into evidence with only an instruction to the jury limiting its admissibility to the maker of the statement (*People v. Sweetin* (1927), 325 Ill. 245, 156

N.E. 354); and where each co-defendant makes an admission or confession orally and the references to the co-defendant applying for the severance are not eliminated from the testimony (*People v. Barbaro* (1946), 395 Ill. 264, 271, 69 N.E.2d 692).

No such showing is present in the case at bar. Instead this case is analogous to *People v. Minnecci* (1936), 362 Ill. 541, 200 N.E. 853, wherein three co-defendants were jointly tried for murder; and the defendant Minnecci accused one of his co-defendants of the crime, but neither of them accused him. Although Minnecci urged antagonistic defenses as a basis for severance, no error was committed in denying the motion. Similarly in the instant case, defendant claims his defense was antagonistic to that of Huff because he accused Huff of the stabbing, yet Huff at trial did not accuse him. As we have observed, these defenses may be contradictory but they are not antagonistic. If anything, Huff's defense was helpful to defendant and defendant's defense was antagonistic to Huff. Huff made no motion for severance. The only issue before us is whether Huff's defense was antagonistic to defendant. In our opinion it was not.

■■ Defendant renewed the motion for severance during the testimony of the State's witness Eshoo. This motion was based on Eshoo's testimony of Huff's oral statement and of Negron's identification of Huff as being the second person who stabbed him and who had been with the other person at the apartment. Eshoo testified at trial after Negron had testified and identified in court both Huff and defendant as the men who were involved in the stabbing. In our opinion the State had in fact adhered to its representation. It is true Negron's testimony and Eshoo's statement concerning Negron's identification of Huff as the second person who stabbed him was significant. Nevertheless, we do not think under the record at the time of its ruling that the trial court abused its discretion in denying the renewed motion for severance. (*Cf. People v. Wilson* (1963), 29 Ill. 2d 82, 91, 193 N.E.2d 449, *cert. denied* (1964), 377 U.S. 955, 12 L. Ed. 2d 499, 84 S. Ct. 1634, *rehearing denied* (1964), 379 U.S. 873, 13 L. Ed. 2d 81, 85 S. Ct. 22. Under these circumstances, failure to sever the two causes did not deny defendant a fair and impartial trial.

### B.

At the conclusion of the evidence, the trial court instructed the jury that an admission may not be considered against any defendant other than the one who made it. The trial court also instructed the jury to give separate consideration to the evidence and law against each defendant. On appeal defendant argues that he was denied a fair and impartial trial because these instructions were useless in preventing prejudice to him. He maintains that *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d

476, 88 S. Ct. 1620, and its clarification in *Roberts v. Russell* (1968), 392 U.S. 293, 20 L. Ed. 2d 1100, 88 S. Ct. 1921, *rehearing denied* (1968), 393 U.S. 899, 21 L. Ed. 2d 191, 89 S. Ct. 73, stand for the proposition that, as a constitutional matter, the risk that a jury will not follow instructions to disregard the statements of one co-defendant against another is so great as to make the instruction useless and the use of the inculpatory testimony impermissible.

Yet the *Bruton* case is inapplicable here. In *Bruton* the conviction was reversed because the co-defendant whose admission was introduced did not take the stand and was not subject to cross-examination, and, thus, the defendant was denied his constitutional right of confrontation. Further, an out-of-court statement is properly admitted into evidence when the maker of such statement is subject to full and effective cross-examination. (*California v. Green* (1970), 399 U.S. 149, 158, 162, 26 L. Ed. 2d 489, 90 S. Ct. 1930; *People v. Carpenter* (1963), 28 Ill. 2d 116, 120-22, 190 N.E.2d 738.) Therefore, the *"Bruton* rule" is violated only where the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for full and effective cross-examination. *Nelson v. O'Neil* (1971), 402 U.S. 622, 627, 29 L. Ed. 2d 222, 91 S. Ct. 1723.

■■ As the Supreme Court said in *Nelson*, "* * * where a codefendant takes the stand in his own defense, denies making an alleged out-of-court statement implicating the defendant, and proceeds to testify favorably to the defendant concerning the underlying facts, the defendant has been denied no rights protected by the Sixth and Fourteenth Amendments." (402 U.S. 622, 629-30, 29 L. Ed. 2d 222, 228, 91 S. Ct. 1723.) That statement is equally applicable to the instant case. Here the co-defendant Huff appeared and testified favorably to defendant. He was subjected to full and effective cross-examination. Thus, defendant's reliance on *Bruton* is misplaced and the limiting instructions were adequate to protect him.

Although defendant maintains that *People v. Clark* (1959), 17 Ill. 2d 486, 162 N.E.2d 413, mandates the reversal of his cause, we disagree. We think that *Clark* is factually distinguishable from the instant case. Clark's co-defendant (Sammons) did not testify at trial and refused to submit to cross-examination by Clark. In *Clark*, a police officer testified that co-defendant Sammons had told the officer that he (Sammons) and Odum and two other men whom he (Sammons) did not know had all gone together to the victim's home; in the instant case, Huff's statement, as testified to by Eshoo, did not even refer to another person. Finally, in *Clark* the prosecutor, quite unlike the State's representation in the instant case, had told the trial court that he (the prosecutor) would seek to connect Clark with the statement of co-defendant Sammons, which in fact he did by later trial testimony of another police officer that Sammons

had made a photographic identification of Clark to him (the officer) as being one of the accomplices. Moreover, *Clark* has recently been cited by our supreme court only as authority for the following general principle: a severance must be granted unless the prosecution declares that statements made by a co-defendant inculpating the defendant will not be offered into evidence, or if offered, that any reference to the party applying for severance will be eliminated. (*People v. Brooks* (1972), 51 Ill. 2d 156, 166, 281 N.E.2d 326; *People v. Clark* (1972), 50 Ill. 2d 292, 294, 278 N.E.2d 782.) That procedure was followed here.

We believe that the recent cases of *Nelson v. O'Neil* and *California v. Green* make clear that the testimony of the declarant at trial denying that he made the alleged out-of-court statement *is more favorable to the accused* than any testimony which cross-examination might have produced had he affirmed the statement as his. (*Brooks*, at 162.) As applied to the case at bar, therefore, Huff's testimony denying an alleged statement that he held Negron while defendant stabbed him and his testimony expressing doubt that defendant had stabbed Negron is favorable, not prejudicial to defendant.

Furthermore, a criminal conviction is not automatically reversed upon the finding of a *Bruton* violation; where properly admitted evidence of guilt is overwhelming and the prejudicial effect of the co-defendant's admission insignificant by comparison, it is harmless error beyond a reasonable doubt to make use of the admission. (*Schneble v. Florida* (1972), 405 U.S. 427, 430, 31 L. Ed. 2d 340, 92 S. Ct. 1056; *People v. Burbank* (1972), 53 Ill. 2d 261, 267-68, 291 N.E.2d 161, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017.) In this case Negron had already provided positive identification of Huff and defendant as his assailants; at most, Eshoo's testimony as to Huff's admission was cumulative.

■■ As in *People v. Rosochacki* (1969), 41 Ill. 2d 483, 493-94, 244 N.E.2d 136, a retrial is particularly inappropriate under circumstances where there is other convincing and plainly adequate evidence to support the verdict. We note that the instant case presents no close question because the victim's testimony alone, if believed by the trier of fact, established defendant's guilt beyond a reasonable doubt. Applying the *Schneble* principle discussed *supra*, we hold that the State's use of the co-defendant's admission was not prejudicial and did not deny defendant a fair and impartial trial.

### III.

### A.

■■ Defendant next contends that he was not proved guilty beyond a reasonable doubt because the complainant was an incompetent witness

whose testimony should have been excluded. From the testimony of the complainant, it appears that Negron consumed vast amounts of beer and wine from 9 p.m. on August 3, 1973, to the early afternoon of the next day. He admitted that he was "high" during the period. As Wigmore points out, however, even habitual intoxication does not in itself incapacitate a person offered as a witness. (2 Wigmore on Evidence §499, at 592 (3d ed. 1940).) The question raised by a competency issue is whether the witness is so bereft of his powers of observation, recollection, or narration that he is thoroughly untrustworthy as a witness on the subject at hand.

A witness is presumed competent and the burden is upon the objecting party to show incompetence. (*Campbell v. Campbell* (1889), 130 Ill. 466, 472-73, 22 N.E. 620; *People v. Jenkins* (1st Dist. 1974), 20 Ill. App. 3d 727, 733, 315 N.E.2d 269.) The trial judge determines the competency of a witness (*Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 574, 69 N.E.2d 293) by deciding whether the alleged incompetency is such as to make the person untrustworthy as a witness. Unless an abuse of discretion is shown, the reviewing court will respect the trial court's determination of competency. (*People v. Brown* (1972), 52 Ill. 2d 94, 105, 285 N.E.2d 1.) We find no abuse of discretion here, and consequently, we affirm the trial court's determination that Negron was competent to testify in this case.

B.

■■ Defendant also contends that he was not proved guilty of attempt murder beyond a reasonable doubt because the evidence was insufficient to establish his guilt. We disagree. The State met its burden of proving that defendant voluntarily and wilfully committed an act, the natural result of which would be the death of another. (*People v. Calhoun* (1st Dist. 1972), 4 Ill. App. 3d 683, 689, 281 N.E.2d 363.) As we observed earlier, the victim's testimony alone would establish defendant's guilt; yet in this case we have more. Defendant admitted that he "held" Negron, which admission manifests his guilt under the theory of accountability. (Ill. Rev. Stat. 1973, ch. 38, pars. 5—1, 5—2(c); *People v. Kessler* (1974), 57 Ill. 2d 493, 497, 315 N.E.2d 29, *cert. denied* (1974), 419 U.S. 1054, 42 L. Ed. 2d 650, 95 S. Ct. 635.) In determining the defendant's accountability for a crime, the trier of fact may consider the defendant's presence at the scene of the crime. (*People v. Hill* (1968), 39 Ill. 2d 125, 135, 233 N.E.2d 367, *cert. denied* (1968), 392 U.S. 936, 20 L. Ed. 2d 1394, 88 S. Ct. 2305.) In proving an attempt, the State need only show an intent to commit the offense and an overt act which constitutes a substantial step in its commission. (*People v. Eveland* (1969), 43 Ill. 2d 90, 93, 250 N.E.2d 654.) The requisite intent can be shown by the surrounding circumstances. (*People v. Koshiol* (1970), 45 Ill. 2d 573, 578, 262 N.E.2d 446,

*cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209.) Finally, accountability may be shown by a defendant's involvement in a spontaneous act (*People v. Richardson* (1965), 32 Ill. 2d 472, 477, 207 N.E.2d 478, *cert. denied* (1966), 384 U.S. 1021, 16 L. Ed. 2d 1023, 86 S. Ct. 1935, *rehearing denied* (1966), 385 U.S. 891, 17 L. Ed. 2d 124, 87 S. Ct. 17) and the act of one participant is the act of all. *People v. Armstrong* (1968), 41 Ill. 2d 390, 399, 243 N.E.2d 825, *cert. denied* (1969), 394 U.S. 992, 22 L. Ed. 2d 768, 89 S. Ct. 1483.

It is clear from the testimony that Negron, Huff, and defendant partied for hours and drank continuously. Negron testified that he was assailed with a wine bottle, stabbed several times with knives, and kicked in the face. By his own admission, defendant "held" the victim during the incident. Holding Negron under the circumstances described was an overt act constituting a substantial step in the commission of the crime of murder. Further, defendant's intent to commit the specific crime may be inferred from the surrounding circumstances. We are convinced that the trier of fact accepted the victim's version of the event. Since we cannot say that the jury's decision was contrary to the manifest weight of the evidence, we will respect that determination. Defendant was proved guilty of attempt murder beyond a reasonable doubt.

## IV.

■■ Defendant's final contention is that the 10- to 30-year sentence imposed was excessive. Because the imposition of a sentence is within the trial court's discretion, the reviewing court will not overturn that decision on appeal unless the defendant has shown an abuse of discretion. In the case at bar, the trial court considered both the violent nature of the attack and defendant's prior criminal history in imposing the sentence. Although defendant suggests that the wounds inflicted were not serious, we find no merit in such a suggestion; it was merely fortuitous that Negron was not more seriously or even fatally injured. We find no abuse of discretion in the trial court's determination and hold that the sentence imposed was not excessive.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

HAYES and JIGANTI, JJ., concur.