THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CEDRIC JONES, Defendant-Appellant.

Fourth District   No. 15674

Opinion filed March 12, 1980.

Richard J. Wilson and Janet Sinder, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Gary J. Anderson and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Defendant, Cedric Jones, appeals judgments of the circuit court of Champaign County convicting him, after a jury trial, of felony theft committed on December 2, 1978, and sentencing him to 4 years' imprisonment. He asserts that his guilt was not proved beyond a reasonable doubt and that the trial court erred in (1) denying his motion for a severance, (2) refusing his tendered instruction concerning circumstantial evidence, and (3) imposing an excessive sentence. He also maintains for the first time on appeal that improper closing argument by the prosecutor denied him a fair trial. He has withdrawn the contention of his supplemental brief that the court also erred in permitting the State to prosecute him as an adult.

At trial, John Kuknyo, manager of an Urbana pizza shop, testified that on December 2, 1978, at about 3 p.m., he, Bruce Blackman and Jeff McNeely, his employees, and Jack Rippey, a deliveryman for a supplier, were all present in the store as he was about to open it for business when the following events occurred. A black male entered the store and asked for a glass of water which he, Kuknyo, gave him. Minutes later another black man entered and was also given a glass of water. During this time he: (1) brought the previous night's cash receipts up to the front of the store; (2) placed this money on a cutting table about 10 feet from the counter where the two visitors were; (3) told McNeely to count it; and (4) went into a back office. Shortly thereafter NcNeely came back to the office and said that one of the men wished to apply for a job. Kuknyo then went to the front and talked to one of the black men while the other listened. He identified the one he talked to as codefendant Anthony Newbern and the other man as defendant. He then went to the back again but was soon called up front again and found that the pile of money had been reduced from about $500 to $149, and the two men had left.

McNeely's testimony corroborated Kukyno's version of the occurrence and provided the following further explanation. After the interview, he went to the back of the store leaving only the two visitors in the front. On his way back, he heard noises sounding like somebody jumping over the counter whereupon he ran back to the front and found the visitors and part of the money gone. Seconds later he ran into the parking lot and saw a 1968 white Buick with a black top driving in an easterly direction in front of the store. Two black males were in the car. Shortly thereafter, accompanied by police he saw the same automobile being driven by Newbern in Champaign. While at Newbern's home he saw a hat that appeared to be the same hat as one worn by defendant at the store. Judith Willis testified to having driven by the store at about 3 p.m. and to having seen two black males running to and entering a light-colored car with a dark top which was in the store's parking lot.

Newbern testified in his own defense and gave the following version of the occurrence. He drove to the store in the car which was previously described. Defendant was there when he arrived. He asked for a glass of water and a job application. He talked to the manager but had to leave before filling out the application because his mother's dog had gotten out of his car. When he saw the dog running down the street in front of the store, he ran out after the dog. He drove around in the car but could not find the dog and so he went home. Defendant was in the store when he left. He did not take any money and he did not see defendant do so. He admitted to having given a different statement to police at an earlier time.

Defendant testified in his own defense, saying that he was not present on the occasion.

The evidence was clearly sufficient to prove defendant's guilt beyond a reasonable doubt. Defendant correctly argues that evidence of his mere presence in the store and his flight was not enough, of itself, to support his conviction. (*People v. Mitchell* (1978), 59 Ill. App. 3d 367, 375 N.E.2d 531; *In re Whittenburg* (1976), 37 Ill. App. 3d 793, 347 N.E.2d 103.) But here proof of his presence was accompanied by circumstantial evidence that: (1) when McNeely went to the back of the store, $500 was on the cutting table; (2) only defendant and Newbern were in the front near the money at that time; (3) all but $149 of the money was gone when McNeely returned; (4) someone jumped over the counter before McNeely returned; (5) Newbern and defendant were gone when McNeely returned; and (6) two men matching the description of defendant and Newbern drove away together in a car. If the jury believed the existence of this evidence, the jury could have concluded that the only reasonable explanation for the coincidence of these circumstances was that defendant and Newbern, with one acting as accessory of the other, took the money with the intent to deprive the owner permanently of its use. If the jury believed Newbern's testimony that he left before defendant and did not take any money, then the jury could have concluded that the only reasonable explanation was that defendant took it.

Although we find the evidence to have supported the conviction, our analysis of that evidence demonstrates the problems involved in trying the defendants together.

■■■ In the trial of civil actions, the truth-seeking process is deemed to be aided by denying severance to defendants where the defense claimed by one may place blame on the other. (See Tone and Eovaldi, *Separation of Trials and Appeals in Multiparty Actions*, 1967 U. of Ill. L. F. 224, 226; *Schwartz v. Swan* (1965), 63 Ill. App. 2d 148, 159, 211 N.E.2d 122, 126.) By trying the defendants together, a plaintiff entitled to recover from at least one of the defendants is protected from triers of fact in separate cases finding for the defendants in each of the cases. But in criminal cases, with the greater importance given to the protection of defendants, severance has been required when jointly charged defendants have "antagonistic" defenses. (See ABA Standards, Joinder and Severance, commentary on §2.3(b), at 41 (approved draft 1968).) In *People v. Yonder* (1969), 44 Ill. 2d 376, 386, 256 N.E.2d 321, 327, the supreme court stated that a defendant is entitled to a severance upon making a clear showing that a codefendant will rely on a defense which is "so antagonistic that a fair trial can be had only by severance." The *Yonder* opinion also stated that a reviewing court will judge the trial court's severance ruling on the basis of the sufficiency of the showing of antagonism in the petition requesting the severance and will not consider what subsequently happened during the course of trial.

Petitions of two defendants in *Yonder* were held to be insufficient. The major claim of the stronger petition was that the other defendant's admission that he had committed the acts charged but was insane would dilute the petitioning defendant's claim that he was not guilty. The court considered this contention to be merely an allegation of "apprehensions of antagonism" between the defenses of the two.

No decision of a court of review of this State making a direct holding that defenses were "antagonistic" has been called to our attention. The case of *People v. Delk* (1976), 36 Ill. App. 3d 1027, 345 N.E.2d 197, concerned an appeal by several defendants from convictions of attempt armed robbery. The conviction of one defendant who had been denied a severance was reversed. The court had admitted in evidence, over his objection, statements by codefendants, not testifying at trial, that they had an intent to rob when entering the premises where the robbery was supposed to have occurred. The defendant in question testified that he had no intention to rob at that time. The theory of the reversal for denial of severance was not because of antagonistic defenses as such. Rather it was granted because, without a severance, that defendant was damaged by having statements of other codefendants admitted in evidence without his having a chance to confront and cross-examine the makers of those statements. (*Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) Here, the State agreed not to introduce into evidence any statements made by Newbern and none were introduced.

In *People v. Miner* (1977), 46 Ill. App. 3d 273, 360 N.E.2d 1141, denial of a motion for severance was upheld. One of the counts charged felony murder based upon an armed robbery occurring at a mine. At the hearing on the motion for severance, it was undisputed that the moving defendant had, in fact, fired the fatal shot. He had made a statement that he had entered the premises looking for his brother, but a codefendant had made a statement that he and defendant had entered the premises to steal gasoline. The appellate court's rationale was that the statements at most raised an apprehension of antagonism. In *People v. Precup* (1977), 50 Ill. App. 3d 23, 29, 365 N.E.2d 1007, 1010, *aff'd* (1978), 73 Ill. 2d 7, 382 N.E.2d 227, this court stated by way of dictum:

> "Antagonistic defenses in the context of severance have been confined to those instances where one or more co-defendants testifies implicating the other."

Here, the motion for severance stated that Newbern would testify that defendant was present at the pizza shop at the time of the theft and his defense "will tend to exculpate himself while being inculpatory as to defendant Jones." It went on to say that Newbern's defense was "in conflict with, inconsistent with and antagonistic toward" defendant's defense. Two hearings were held concerning the request for severance.

During those hearings defense counsel explained to the court that (1) the evidence was expected to show that a strong inference would arise that one of the two persons coming into the pizza shop took the money; (2) Newbern would testify that he and defendant were present, but he left first and did not see what defendant did; and (3) defendant would testify that he was not there.

*Yonder* speaks of the reviewing courts passing upon the propriety of the denial of a request for severance as to defendants solely upon the allegation of the petition to sever. We conclude that we may also consider the representation of counsel made at the hearing on the petition. To do so is consistent with *Yonder's* prohibition against looking to see how the case turned out. Here the representations of defense counsel show that there would be an issue as to the defendant's presence at the scene and that in view of the nature of the circumstantial evidence, the issue would likely be determinative.

In *Precup* both defendants were shown to have contended that they were not present at the scene of the crime at the time of its commission. They both claimed to have been together elsewhere but disagreed as to some of the places where they had been and to the sequence of events during the time of their alibi. Each of those defendants had defenses properly described as only being conflicting but not "implicating the other." The verb "to implicate" has been defined as: "to show to have a connection with a crime * * *." (Webster's New World Dictionary (2d ed. 1974).) Here, although defendant's presence at the scene would not of itself have been enough to convict him, his counsel showed at the hearings on the severance motion that, when combined with the circumstantial evidence, it would infer his guilt. Thus the Newbern defense testimony implied defendant's guilt.

Indeed, it was apparent that the likely testimony of Newbern would be only slightly more damaging to defendant if he were able to testify to actually having seen defendant take the money. We are unable to discern any hard and fast rule as to when severance should occur in a criminal case, and believe that each situation should be judged on its own facts. In the instant case we believe the defenses were shown to be "antagonistic" and the trial court should have granted a severance.

As we deem reversal and remandment for a new trial to be required, we need not consider the other issues raised. The cause is remanded to the circuit court of Champaign County for a new trial.

Reversed and remanded.

MILLS, P. J., and WEBBER, J., concur.