THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DANNY MURPHY *et al.*, Defendants-Appellants.

First District (5th Division)    No. 79-67

Opinion filed  February 20, 1981.

James J. Doherty, Public Defender, of Chicago (Marcia L. Cohen and James H. Reddy, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and John Ashenden, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Defendants, Danny Murphy and Kenneth Bell, were charged with armed robbery. (Ill. Rev. Stat. 1977, ch. 38, par. 18—2.) Defendants were tried simultaneously, Bell by a jury and Murphy by the court. Both defendants were found guilty. Bell was sentenced to a term of 9 years, and Murphy was sentenced to a term of 4 to 6 years. On appeal, defendants contend that the court erred in denying Bell's motion for severance. We affirm as to Murphy and reverse and remand as to Bell.

Prior to trial, Bell's motion for severance was denied after an agreement was had that any reference to Bell would be excised from the statement Murphy had given to the police. At the start of trial, Bell's attorney made an oral motion that if Murphy elected to testify, that he do so outside the presence of the jury. After the State objected to this motion, the court reserved ruling until Murphy elected to testify.

The following pertinent testimony was adduced at trial. On May 25, 1977, at approximately 9:45 p.m., Mae Maxwell was at Perry's Chicken Shack at 1118 West 79th Street. Upon leaving the restaurant, as she walked to her car, two men approached and demanded to talk with her. They then proceeded to rob her. Ms. Maxwell identified the two defendants in court as the two men who robbed her at gunpoint. She testified that Bell carried a gun in a bag and that she was able to see the handle and a little part of the metal between the handle and the hammer. She gave Bell her purse and the bag of chicken she had just purchased. Bell then asked for her car keys. Ms. Maxwell threw the keys on the ground

and began moving away from the car. Murphy hollered, "Don't move or I'll shoot." Bell then pushed Ms. Maxwell against a brick wall and attempted to go into her bra for more money. She told him all her money was in her purse. Murphy again hollered, "Don't move or I'll shoot." Bell then threw Ms. Maxwell's car keys to Murphy, who got in on the driver's side. Bell began pulling Ms. Maxwell by her wrist towards the car. She broke loose and ran into the restaurant. Murphy then instructed Bell to shoot her. Bell started to go after her but stopped and ran back to Ms. Maxwell's car. Defendants then drove away. A restaurant employee called the police. After talking to the police, she was driven home.

Later that evening Officer Conrad arrested Murphy after observing him drive through a red light, nearly strike a parked car, and then drive the wrong way down a one-way street. Murphy was driving Ms. Maxwell's blue Malibu. The following morning Officer Conrad called Ms. Maxwell at home. During the conversation she gave Officer Conrad a description of her car and of defendant Murphy. She then went to the police station where she identified her car. She noticed that chicken bones were all over the back seat, that the driver's seat was torn and that the radio was missing. She then viewed a lineup and identified Murphy as one of her assailants.

On June 11, 1977, Ms. Maxwell was again called to the police station to view a lineup. At that time she identified Bell as the other man who robbed her.

Bell testified that at the time of the robbery he was at home with his father, brother and grandmother. His brother and grandmother corroborated this testimony, stating that Bell had spent the evening of May 25, 1977, at home playing cards and watching television until he went to sleep at 11:30 p.m. Defendant Bell also testified he was a friend of Murphy.

Prior to Murphy's testimony, Bell's attorney requested that Murphy testify outside the jury's presence as Murphy's testimony would implicate Bell, thereby contradicting his alibi. This motion was denied. Murphy then testified that at approximately 9:30 p.m. on May 25, 1977, he met Bell near Perry's Chicken Shack, that he saw Bell approach and then speak to Ms. Maxwell, but that he did not see him take anything from her. Murphy further stated that Bell gave him keys to the blue Malibu and that the two of them got into the car and drove off. At this point Bell's attorney asked that a mistrial be declared because Bell's and Murphy's defenses were clearly antagonistic and prejudicial to Bell. This motion was denied.

Thereafter, the jury found Bell guilty of armed robbery. In a separate finding, the court found Murphy guilty of the same charge. After a hearing in aggravation and mitigation, Bell was sentenced under the code in effect at sentencing to a term of 9 years, and Murphy was sentenced under the code in effect on May 25, 1977, to a term of 4 to 6 years. Defendants appeal.

Opinion

## I.

Defendants contend that their convictions should be reversed since the trial court erred in denying Bell's motion for severance where the defenses presented were antagonistic and prejudicial. The State argues that the court properly refused to sever defendants' trial since no true conflict existed between their defenses.

■■ The general rule is that persons jointly indicted should be jointly tried and separate trials are only required when the defenses are so antagonistic that a fair trial can be achieved only through severance. (*People v. Barbaro* (1946), 395 Ill. 264, 69 N.E.2d 692; *People v. Dorsey* (1980), 88 Ill. App. 3d 712, 410 N.E.2d 1132; *People v. Miner* (1977), 46 Ill. App. 3d 273, 360 N.E.2d 1141; *People v. Davis* (1976), 43 Ill. App. 3d 603, 357 N.E.2d 96.) However, it is incumbent upon the defendant moving for a separate trial to demonstrate prior to trial how he would be prejudiced by a joint trial. (*People v. Stevenson* (1980), 90 Ill. App. 3d 903, 413 N.E.2d 1339; *People v. Miner.*) The decision to grant severance rests within the sound discretion of the trial court. (*People v. Rogers* (1979), 79 Ill. App. 3d 745, 398 N.E.2d 1058; *People v. Clark* (1979), 71 Ill. App. 3d 381, 389 N.E.2d 911.) However, this discretion should not be exercised arbitrarily, capriciously, or in such a way as to work an injustice. (*People v. Barbaro.*) The mere apprehension that defenses may prove antagonistic without a showing that such apprehensions are well founded is an insufficient ground for severance. (*People v. Moore* (1978), 65 Ill. App. 3d 712, 382 N.E.2d 810; *People v. Davis* (1976), 43 Ill. App. 3d 603, 357 N.E.2d 96.) Nevertheless, the court has a continuing duty at all stages of trial to grant severance if prejudice appears. (*People v. Lee* (1980), 86 Ill. App. 3d 922, 408 N.E.2d 335; *People v. Clark.*) Antagonistic defenses have been confined to those instances where one or more codefendants testify implicating the other. (*People v. Jones* (1980), 81 Ill. App. 3d 724, 401 N.E.2d 1325; *People v. Precup* (1977), 50 Ill. App. 3d 23, 365 N.E.2d 1007.) The verb "to implicate" has been defined as "to show to have a connection with a crime * * *." (*People v. Jones*; Webster's New World Dictionary (2d ed. 1974).) Antagonistic is defined as "that which is characterized by or resulting from antagonism; marked by or arising from opposition, hostility, antipathy or discord." (*People v. Davis* (1976), 43 Ill. App. 3d 603, 610, 357 N.E.2d 96, 102.) In sum, where there is more than one defendant and the defenses are antagonistic, and one defendant accuses the other, making it impossible for defendant requesting severance to have a fair trial, the severance should be granted. *People v. Lindsay* (1952), 412 Ill. 472, 107 N.E.2d 614; *People v. Minnecci* (1936), 362 Ill. 541, 200 N.E. 853.

■■ Although defendants were tried simultaneously, Murphy requested a

bench trial and Bell demanded a trial by jury. At trial, Murphy did not object to the jury being present during his testimony. Nor did he raise the issue of severance in his motion for a new trial. Murphy's failure to raise this issue in his written motion for a new trial constitutes a waiver thereof and precludes him from raising the issue on appeal. *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856, 857; *People v. Hairston* (1970), 46 Ill. 2d 348, 367, 263 N.E.2d 840, 851-52.

■■ But even assuming that Murphy had not waived this issue, he fails to show how the presence of the jury during his testimony caused him prejudice. The jury in the instant case was only determining Bell's guilt or innocence. Furthermore, Murphy cannot be heard to complain that Bell's alibi defenses prejudiced him in any way. First, this issue was never raised during trial or in his motion for a new trial. His failure to raise this issue constitutes a waiver. Nevertheless, Bell's testimony in no way accused or implicated Murphy in any criminal activity. Bell along with his two alibi witnesses merely testified that Bell had spent the entire evening of May 25, 1977, at home. Although Bell's alibi defense may have been inconsistent or contradictory to that of Murphy's testimony, it was not antagonistic. *People v. Davis* (1976), 43 Ill. App. 3d 603, 357 N.E.2d 96.

Murphy's situation is analogous to *People v. Davis*. There the defendant claimed that his defense was antagonistic to that of Huff because he accused Huff of the stabbing, yet Huff did not accuse him. That court held that although Huff's defense may have been contradictory, it was not antagonistic. It reasoned that if anything Huff's defense was helpful to defendant and defendant's defense was antagonistic to Huff. However, Huff made no motion for severance and was not involved in that appeal. Therefore the court did not consider whether Huff was entitled to severance. See also *People v. Minnecci* (1936), 362 Ill. 541, 200 N.E. 853.

Bell's answer to the State's request for pretrial discovery indicated that he would rely on the State's inability to prove their case beyond a reasonable doubt and that he would state that at the time of the alleged crime he was at home with his grandmother, father and brother. At the start of the trial, Bell's attorney made an oral motion that if Murphy elected to testify that he do so outside the presence of the jury. The State objected to this motion, and the court reserved ruling until Murphy elected to testify. After the State rested and prior to Murphy's testimony, Bell's attorney again requested that Murphy testify outside the presence of the jury. Bell's attorney indicated the Murphy's testimony would implicate Bell, thereby contradicting Bell's alibi. Bell's attorney also indicated that no delay would be occasioned by excusing the jury since Murphy's case was being decided by the court and that the court would be hearing Murphy's testimony. Bell's motion was then denied.

Thereafter Murphy testified that approximately 9:30 on May 25, 1977, he met Bell at Perry's Chicken Shack; that he saw Bell approach Ms. Maxwell and have a conversation with her but that he did not see Bell take anything from Ms. Maxwell. Murphy further stated that Bell gave him the keys to the blue Malibu and that the two of them got into the car and drove off. At this point Bell's attorney asked that a mistrial be declared because Bell's and Murphy's testimony were clearly antagonistic and prejudicial to Bell. Bell's motion was denied.

The record indicates that Bell's attorney sufficiently apprised the court that the testimony of Murphy would be prejudicial to Bell's alibi defense. While the State argued that severance should continue to be denied because of the court's previous excise order, Bell was premising his request for severance on the antagonistic nature of the two defendants' defenses, not the introduction of Murphy's out-of-court statement.

The State on appeal argues that no true conflict existed between defendants' testimony because Murphy merely claimed that he saw Bell at the scene of the crime and did not accuse Bell of committing the crime. Murphy's testimony went much further than merely placing Bell at the scene of the crime. Murphy testified that he saw Bell approach and then talk with Ms. Maxwell outside Perry's Chicken Shack. He also testified that Bell was carrying something in a brown bag but that he could not see if it was a gun. Murphy further testified that although he did not see Bell take anything from Ms. Maxwell, Bell did throw him a set of car keys and that they subsequently drove off in Ms. Maxwell's blue Malibu. Finally, Murphy testified that Ms. Maxwell walked hurriedly back into Perry's Chicken Shack. It is apparent that Murphy's testimony could only be more damaging to Bell if he had testified that he saw Bell rob Ms. Maxwell at gunpoint. (*People v. Jones* (1980), 81 Ill. App. 3d 724, 401 N.E.2d 1325.) Considering the fact of Ms. Maxwell's previous testimony that she had been robbed, Murphy's testimony, which attempted to exculpate himself, plainly implicated Bell in the alleged robbery.

In *People v. Jones* the identical situation was considered. There defendant and his codefendant, Newbern, were charged with theft of a pizza shop. Defendant made a motion for severance, stating that Newbern would testify that defendant was present at the time of the theft and that this defense would tend to exculpate himself while inculpating defendant and that Newbern's defense was in conflict, inconsistent, and antagonistic. This motion was denied. At trial, Newbern testified that defendant was in the store when he left and that he did not take any money nor did he see defendant do so. Defendant testified in his own defense, saying he was not present on the occasion. Although the court recognized that the evidence was clearly sufficient to prove defendant's guilt beyond a reasonable

612

doubt, it reversed defendant's conviction since the defenses were shown to be antagonistic and severance should have been granted. That court reasoned that although defendant's presence at the scene would not of itself have been enough to convict, his counsel showed that when combined with the circumstantial evidence, it would infer his guilt. Thus, the Newbern defense testimony implied defendant's guilt. That court noted Newbern's testimony would only be slightly more damaging if he would have testified to have actually seen defendant take the money. See also *People v. Dorsey* (1980), 88 Ill. App. 3d 712, 410 N.E.2d 1132.

■■ Murphy's testimony not only placed Bell at the scene of the crime but also indicated that Bell talked with the victim. In addition to contradicting Bell's alibi defense, Murphy's testimony plainly implicated Bell in the alleged robbery. In the instant case Bell's attorney made repeated requests that Murphy's testimony be heard outside the presence of the jury. Bell's explanation that Murphy's testimony would implicate him, thereby contradicting his alibi and that the possibility of prejudice was absolute, was sufficient to show that the defenses were antagonistic. Therefore, the trial court should have granted Bell's motion that Murphy be permitted to testify outside the presence of the jury to eliminate any possible prejudice. See *People v. Dorsey.*

For the reasons stated, we affirm the conviction as to defendant Murphy and reverse and remand as to defendant Bell.

Affirmed as to Murphy; reversed and remanded as to Bell.

LORENZ and WILSON, JJ., concur.